309 A.2d 851.

STATE *vs.* ROBERT RAGONESI.

OCTOBER 9, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Robert Ragonesi was tried in May of 1972 in the Superior Court for Newport County on separate indictments charging him with assault, assault with intent to rape and kidnapping. He was convicted on the first two charges and acquitted on the third. Following the denial of his motion for a new trial, he was sentenced to serve terms of one and four years, respectively, on the assault and assault with intent to rape charges, and is now confined at the Adult Correctional Institutions, having been committed there without bail pending disposition of his appeal to this court.[1]

The view we take of the case makes it unnecessary to refer to any evidence save what came from the prosecutrix, and to it but briefly. She was a 19-year-old unmarried female, and shortly after midnight on March 14, 1970 was traveling alone in her automobile from Newport to her home in Fall River, Massachusetts. As she came to the

---

[1]The enactment of P. L. 1972, ch. 169, secs. 10 and 11 substituted an appeal for a bill of exceptions as the procedural vehicle for obtaining a review in this court of a Superior Court judgment or order in a criminal proceeding. *Accord,* Rule 4(b) of the Rules of this court.

Sakonnet River Bridge in the town of Portsmouth, a following vehicle forced her off the road and then came to a stop. Its driver alighted, approached her automobile, falsely identified himself as a police officer, and asked for her driver's license and registration. As she searched for the license he struck her in the face breaking her nose and causing her to lose consciousness. He then pulled her from her automobile, dragged her by the arms to his vehicle, placed her in it, and then, after driving for about 35 to 40 minutes, stopped in a wooded picnic area where, by force and threat of force, he compelled her against her will to submit to sexual intercourse and to satisfy him sexually by oral and manual stimulation.

After thus describing what had occurred, the prosecutrix, without interposition of an objection from defendant, unequivocally identified defendant as her assailant. The state's attorney then inquired whether she had seen defendant on a prior occasion, i.e. April 7, 1970, at the Fall River police station, to which she replied, "Oh, yes. Yes, I identified him." At that point she was interrupted by defendant's counsel, who requested a hearing outside of the jury's presence so that he might attempt to probe the pre-trial identification for potential unfairness and possible due process violations.

The defendant claims that the trial justice's refusal to permit that hearing ignored the basic principles enunciated in the "lineup" cases — *Simmons* v. *United States*, 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Gilbert* v. *California*, 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *Stovall* v. *Denno*, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States* v. *Wade*, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).[2]

---

[2]*Kirby* v. *Illinois,* 406 U. S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) was not decided until after the trial in this case had concluded.

There is no need to examine all of these principles, it being sufficient for our purposes to observe that this case is controlled by the per se exclusionary rule of the *Gilbert* case. Essentially, that rule states that the prosecution may not as part of its direct case bolster an in-court identification with testimony of a pre-trial extrajudicial identification at which the accused was denied the right to counsel or due process. To admit such testimony, *Gilbert* further states, will constitute error which, unless rendered harmless by application of the *Chapman-Harrington* escape valve,[3] will require automatic reversal. And finally the rule provides that proof that the courtroom identification had an independent source will not obviate the necessity for reversal. *United States* v. *Green*, 429 F.2d 193, 196 (D.C. Cir. 1970); *Clemons* v. *United States*, 408 F.2d 1230 (D.C. Cir. 1968); Sobel, *Eye-Witness Identification* §29 at 52-54 (1972); 1 Wharton, *Criminal Evidence* §187 at 369 (13th ed. 1972); *see United States* v. *Broadhead*, 413 F.2d 1351, 1359 (7th Cir. 1969). In this final respect the rule differs from that which prevails when the evidence of a tainted pre-trial confrontation has come into the case otherwise than as part of the state's case. *State* v. *Souza*, 110 R. I. 261, 292 A.2d 214 (1972); *State* v. *Beaulieu*, 110 R. I. 113, 290 A.2d 850 (1972).

Here the record discloses that during direct examination the state elicited from the prosecutrix testimony that defendant was her assailant and that she had also seen and identified him at the police station a few weeks after the alleged offenses occurred but prior to either the trial or to the indictments. It is completely silent, however, on the circumstances attendant upon that prior identification and the possibility of its being tainted by illegality.

---

[3] *Harrington* v. *California,* 395 U. S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman* v. *California,* 386 U. S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The defendant attempted to fill this void when, immediately following the introduction of the evidence of the earlier confrontation, he requested a hearing out of the presence of the jury for the purpose of ascertaining whether constitutionally impermissible methods or procedures had been resorted to at the station house. The trial justice denied the request on the ground that the in-court identification had an independent source. That clearly was an unsound basis for that ruling not only because the independent source doctrine has no place in a case controlled by the *Gilbert* per se exclusionary rule, but also because applicability of any of the exclusionary rules fashioned in the lineup cases requires a determination that the pre-trial identification is illegal.

In any event, the necessity for granting defendant's request for a hearing seems obvious and it was error to deny it.[4]  *Clemons* v. *United States, supra; State* v. *Boyd,*

---

[4]In order to provide guidance and direction for bench and bar we set out in full the procedural guidelines formulated in *Clemons* v. *United States,* 408 F.2d 1230 (D.C. Cir. 1968), for the conduct of trials involving post-*Wade* and *Gilbert* identifications:

"Whenever the prosecution proposes to make eyewitness identification a part of its case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing outside the presence of the jury, the circumstances of any pre-trial identification. If it was one where the court finds that the Sixth Amendment right to counsel existed but was not observed, the prosecution may not, under the *per se* exclusionary rule enunciated by the Supreme Court in *Gilbert,* offer such identification as part of its case; and the same rule would appear to be applicable with respect to prosecution evidence of post-*Stovall* pre-trial identifications found by the court to be violative of due process.

"Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any

Me., 294 A.2d 459 (1972); *see State* v. *Beaulieu,* 110 R. I. 113, 290 A.2d 850 (1972), where, in comparable circumstances, we approved the procedure of conducting a hearing in the jury's absence on the question of whether a pre-trial lineup was tainted. Ordinarily this kind of error would call for a remand to the trial court to afford it an opportunity to explore the circumstances of the pre-trial identification and to determine whether it violated constitutional standards. In this case, however, that is an unacceptable alternative since here the error in denying the requested hearing was compounded by the trial justice's refusal to permit defendant to cross-examine the prosecutrix concerning the circumstances surrounding the out-of-court confrontation.

In the line of inquiry which was thus blocked, defendant, to be sure, intended to delve into areas which went beyond the scope of what had been elicited from the prosecutrix during her direct examination. But, even on the assumption that the prior confrontation was untainted, how else could he test its potential for possible mistakes, or the identifying witness's credibility, or ability to recollect; and how better could he challenge the weight which the jury's awareness of the earlier confrontation might have added to their evaluation of the courtroom identification? These were matters which were equally as important to an effective cross-examination as was the right to develop the underlying facts in the case, and they were matters for the fact finders who should not have been denied access to information which might have led them to conclude that factors contributing to the extrajudicial identification, although not

event. If the judge regards only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification." *Id.* at 1237.

346

themselves constitutionally impermissible, were nonetheless of such a character as to cast some doubt on the reliability of the later courtroom identification.

It is for reasons such as these that the general rule confining the scope of cross-examination to facts and matters brought out in direct examination has never been construed as prohibiting inquiries which are designed to explain, contradict or discredit any testimony given by a witness on direct examination or to test his accuracy, memory, veracity or credibility. *Atlantic Refining Co.* v. *Director of Public Works*, 102 R. I. 696, 713, 233 A.2d 423, 432 (1967); *accord, State* v. *Mancini*, 108 R. I. 261, 270, 274 A.2d 742, 747 (1971); *Bedrosian* v. *O'Keefe*, 100 R. I. 331, 334, 215 A.2d 423, 425 (1965); 3 Wharton, *Criminal Evidence* §870-71 at 266-68 (12th ed. 1955).

Impeachment of the credibility of a witness is, after all, a basic purpose of cross-examination. *Atlantic Refining Co.* v. *Director of Public Works, supra* at 713, 233 A.2d at 432. That it had a place in this kind of proceeding was recognized by Mr. Justice Black who, though he would not have granted defendant's request to stop the "trial in midstream" for the purpose of holding a "tainted fruit" hearing, nonetheless entertained no doubts that "[t]he fact of and circumstances surrounding a prior lineup identification might be used by the defense to impeach the credibility of the in-court identifications * * *." *United States* v. *Wade, supra* at 248, 87 S.Ct. at 1943, 18 L.Ed.2d at 1169 (Black, J., dissenting).

Certainly to have permitted defendant in this case to attempt by cross-examination to impeach the credibility of the in-court identification by bringing out what occurred at the earlier confrontation would have fulfilled the *Wade-Gilbert-Stovall* philosophy of bringing into the open for legal assessment all the circumstances surrounding the pretrial identification, and it might, in addition, have substan-

tially lessened the possibility of a misidentification. *See Simmons* v. *United States, supra* at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253. To have denied defendant both the right to cross-examine and a hearing for an assessment of whether the earlier confrontation was so tainted as to warrant application of the *Gilbert* per se exclusionary rule was clearly an abuse of discretion and a prejudicial error which can only be cured by a new trial. *DeLilly* v. *State,* 11 Md. App. 676, 276 A.2d 417 (1971); *Davis* v. *State,* 467 P.2d 521 (Okla. Crim. 1970).

Of the several additional contentions which defendant has briefed and argued, the only one which may arise at a new trial concerns the denial of his motion to sever the indictments. He has, however, failed to support that claim with any analysis, discussion or citation of authority. We are unwilling to decide that challenge in a vacuum and it must, at least for purposes of this review, be deemed to have been waived. *State* v. *Carufel,* 106 R. I. 739, 742, 263 A.2d 686, 687-88 (1970); *accord,* Rule 16 of the Rules of this court.

For the reasons indicated the defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remitted to the Superior Court.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Edward E. Dillon, Jr.,* Special Asst. Attorney General, for plaintiff.

*James S. O'Brien,* for defendant.