313 A.2d 661.

STATE *vs.* PIERRE FRANK GRENIER.

DECEMBER 10, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin. Kelleher and Doris, JJ.

Doris, J. This is an indictment charging the defendant, Pierre Frank Grenier, with robbery. The case was tried to a Superior Court justice sitting with a jury which returned a verdict of guilty as charged. It is before this court on defendant's bill of exceptions to several rulings of the trial justice.

The alleged offense was the robbery of a department store in the city of Woonsocket on the evening of September 10, 1968. Mrs. Denyse Remillard, an employee of the W. T. Grant Company which operates the store, testified that on that date at approximately 8:25 p.m., she saw a man enter her office. He entered the office in a crouching position, armed with a gun, and with a woman's nylon stocking pulled over his head. After ordering her to remain

seated at her desk, the robber took an amount of money estimated as from one to two thousand dollars from the store safe and from Mrs. Remillard's desk top. During the commission of the crime, Mr. Richard W. Peckrul, the store manager, entered the office. The armed robber ordered him to sit at another desk. Thereupon, having collected the money from the desk and the safe, the robber left the office. The entire episode consumed no longer than five minutes, and, during this period, the robber remained in a more or less crouching position. After the robber left the premises, Mr. Peckrul telephoned the Woonsocket police to report the robbery and two officers came to the Grant store where both Mrs. Remillard and Mr. Peckrul gave a preliminary statement concerning the robbery.

Immediately thereafter, Mrs. Remillard and Mr. Peckrul proceeded to the Woonsocket police station to make a formal statement. The next day in her office Mrs. Remillard was shown five police photographs, commonly known as "mug shots", by Woonsocket Police Sergeant Joseph Solano. Four of the mug shots were marked as being from the Woonsocket police department files, and had blank backs. The shot of defendant was marked as a Providence police department photograph, and contained information regarding defendant's physical characteristics on the back of the photograph. Mrs. Remillard identified defendant's photograph as a picture of the robber whom she had observed on the previous day. Mr. Peckrul entered the office as she was completing her identification. He then proceeded to also select the photograph of defendant as that of the robber.

Testimony revealed that at about 2 a.m. on September 12, 1968, both eyewitnesses were requested to go to the Woonsocket police station. At the request of Police Captain Charles J. Dubuque, they stood in a hallway, next to an open door, and listened to voices emanating from the

next room. Mrs. Remillard stated that one of the voices was similar to that of the robber. Mr. Peckrul also identified one of the voices as being the voice of the robber. When Mrs. Remillard and Mr. Peckrul entered the room, its three male occupants were silent so that neither eyewitness to the crime knew which of the men had been speaking as they listened outside the door. Two of the three men in the room were police officers, and the third man was defendant Grenier. One of the police officers was known to both eyewitnesses. Both Mrs. Remillard and Mr. Peckrul identified defendant as the robber. They testified that it was later ascertained that the remaining man in the office was also a police officer, although it appeared they had already assumed this to be so.

Trial began on April 15, 1971. Mrs. Remillard was called as the state's first witness, and was a short way into her testimony when the jury was excused. At this point in the testimony Mrs. Remillard had made an in-court identification of defendant, but there had been no testimony regarding any pretrial identification. In the absence of the jury, Mrs. Remillard, Mr. Peckrul, Sergeant Solano and Captain Dubuque were then questioned extensively in regard to the pretrial identifications by the eyewitnesses. At the conclusion of this testimony, the trial justice ruled that the eyewitnesses' in-court identification was admissible into evidence. The jury was recalled, and the state proceeded to present its case. The state introduced testimony concerning the pretrial identifications, namely, viewing of the photographs by the eyewitnesses, the voice identification, and the identification of defendant by the eyewitnesses at the police station. During the testimony of another Woonsocket police officer, Chief Inspector Raymond D. Tempest, the trial justice admitted into evidence, over defendant's objection, the five photographs used in the pretrial identifications. Upon conclusion of the state's case, defendant's

motion to strike the in-court identification by the eye-witnesses was denied.

The defense in presentation of its case introduced testimony by a law clerk concerning his purchase of a pair of nylon stockings on the date of the trial. A Providence Police Captain, John J. Power, testified as to the records concerning defendant's physical features. During his testimony it was revealed that said record, as well as defendant's picture used in the first pretrial identification, was made on August 6, 1968, one month prior to the date of the robbery.

Captain Dubuque was recalled by the defense, and testified as to the length of time required to drive from Woonsocket to Pawtucket, where defendant resided at the time of the robbery. Mr. Peckrul, after being recalled by the defense, testified concerning the basis of his identifications. He also stated that the stockings which had been purchased by the defense could well have been as sheer as the one used in the robbery, but that it was a "stretchie" type, not available in 1968.

Robert E. Yourman of Laurel, Maryland, who was a neighbor of defendant in Pawtucket at the time of the robbery, testified that he, Mrs. Grenier, and defendant had been together in Pawtucket until a short time prior to the time of the robbery, although Mrs. Grenier had departed shortly before he and Grenier separated. At the conclusion of this testimony, defendant's motion to conduct a demonstration involving the stocking was denied by the trial justice.

The state in rebuttal called Captain Dubuque, who again testified as to the time required to drive from defendant's residence in Pawtucket to the scene of the alleged offense. He also testified that defendant's wife had been present in the courtroom during the trial.

During the state's closing argument defendant objected to two comments by the prosecutor. Both of defendant's

objections were overruled by the trial justice. After having been charged by the trial justice the jury returned a verdict of guilty. The defendant directs our consideration to five questions which encompass nine exceptions taken by defendant to rulings by the trial justice.

We first consider defendant's contention that the procedures used at the pretrial identifications were so unnecessarily suggestive that they constituted a denial of his rights guaranteed by the fourteenth amendment and are therefore grounds for reversal.

In order to buttress his argument that reversible error has been committed defendant directs our attention to the following "lineup" cases: *Simmons* v. *United States,* 390 U. S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall* v. *Denno,* 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Gilbert* v. *California,* 388 U. S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *United States* v. *Wade,* 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

It is unnecessary for us to examine all the principles in these cases since the per se exclusionary rule of *Gilbert* is applicable here. The *Gilbert* rule is directed not against the in-court identification but against testimony concerning the pretrial confrontation. The rule essentially states that where there is a denial of the right to counsel at the pretrial confrontation or where the pretrial confrontation is in any other respect rendered "unfair" by due process standards, the trial court must suppress all evidence of the pretrial confrontation. If, despite the suppression order, the prosecution utilizes such evidence, it is per se reversible error. If the trial court denies suppression of evidence of the pretrial confrontation and the prosecution uses this evidence in its direct case, a contrary finding by an appellate court will require automatic reversal. In short, where the prosecution on its direct case bolsters an in-court identification by evidence of a previous identification at a pre-

504

trial confrontation, it does so at its peril. If, on appellate review, the pretrial confrontation is found to be violative of *Wade-Gilbert-Stovall* or *Simmons* standards, a reversal will be required. Proof of an independent source will not save from reversal. *Clemons* v. *United States,* 408 F.2d 1230 (D. C. Cir. 1968); *State* v. *Ragonesi,* 111 R. I. 903, 309 A.2d 851 (1973); Sobel, *Eye-Witness Identification* §29 at 52-58 (1972).

On the other hand, if the prosecution does not introduce the tainted pretrial confrontation evidence and it is introduced by the defendant, no reversal will be required if the prosecution is able to establish from the record that the in-court identification had an independent source. *State* v. *Souza,* 110 R. I. 261, 292 A.2d 214 (1972); *State* v. *Beaulieu,* 110 R. I. 113, 290 A.2d 850 (1972); *State* v. *Camerlin,* 108 R. I. 524, 277 A.2d 291 (1971). This rule while applied in *Gilbert* because of a denial of a right to counsel at a lineup, also applies to violation of due process at lineups, showups, and all photo identifications. *People* v. *Caruso,* 68 Cal.2d 183, 436 P.2d 336, 65 Cal. Rptr. 336 (1968). The rule requires automatic reversal unless the error is found by the appellate court to be harmless; that is, the appellate court must be convinced beyond a reasonable doubt that the constitutional error played no part in the verdict. *Harrington* v. *California,* 395 U. S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman* v. *California,* 386 U. S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Here, the record discloses that during direct examination the state elicited from both eyewitnesses testimony that defendant was the robber and that they had seen and identified him at the police station two days after the robbery. The defendant, arguing strongly that the procedures used in the pretrial identifications were blatantly suggestive, points to the fact that the eyewitnesses while standing in a hallway outside a room at the police station heard a voice

emanating from inside the room, and maintains that since they had no way of knowing which of the three persons in the room was speaking, they could not properly make a voice identification. The defendant further argues that the showup at the police station was unnecessarily suggestive since two of the men present were police officers, neither of whom resembled defendant, and neither of whom had the facial scar mentioned in the original description given to the police by the eyewitnesses.

The state contends that where a confrontation is unnecessarily suggestive and patently conducive to a mistaken identification, an in-court identification may nevertheless properly be made to a jury even though the pretrial identification is constitutionally tainted. *State* v. *Souza, supra.* *Souza,* however, was not controlled by the *Gilbert* per se rule. The *Gilbert* per se rule requires that on appeal we review the record to determine whether or not the procedures utilized in the pretrial identifications were so unnecessarily suggestive and conducive to a mistaken identification as to constitute a denial of due process.

We have ruled in similar cases in the past that the totality of the circumstances would be determinative in our consideration of whether pretrial procedures were impermissibly suggestive. *State* v. *Souza; State* v. *Beaulieu;* and *State* v. *Camerlin,* all *supra; State* v. *Giragosian,* 107 R. I. 657, 270 A.2d 921 (1970); *State* v. *Mandarelli,* 105 R. I. 696, 254 A.2d 738 (1969); *State* v. *Wright,* 105 R. I. 556, 253 A.2d 593 (1969).

Considering the circumstances of the confrontations in this case in their totality, we conclude that the pretrial identifications were unnecessarily suggestive and conducive to a mistaken identification and so violated the concept of fairness that they were violative of defendant's right to due process of law guaranteed by the fourteenth amend-

ment, and that therefore the admission of the pretrial identifications was error.

It now becomes necessary for us to ascertain whether the error of the trial justice in admitting evidence of the tainted pretrial identifications was harmless.

In *Harrington* and *Chapman,* both *supra,* the Court ruled that before a constitutional error can be held harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt. In other words, the appellate court must be convinced beyond a reasonable doubt that the constitutional error played no part in the verdict.

Applying the enunciated *Harrington-Chapman* standard, we have no doubt that the error in this case was not harmless to the defendant. We need only point to the showup at the police station wherein, after being called at 2 a.m. to identify a suspect, the eyewitnesses were brought into a room where only three people were present, two of whom were police officers, neither of whom resembled the defendant physically or had a scar on his face. It also appears from the record that the two police officers in the room with the defendant at the showup are the same two police officers who interviewed Mrs. Remillard at the scene immediately following the robbery. This showup, together with the evidence of the voice identification wherein the eyewitnesses had no opportunity to see the parties involved in the conversation, makes it impossible for us to say that the state has demonstrated beyond a reasonable doubt that the evidence of the tainted pretrial confrontation did not contribute to the conviction of the defendant by the jury. We conclude therefore that the admission into evidence of the pretrial identifications was not harmless but prejudicial error which can only be cured by a new trial for the defendant. It accordingly becomes unnecessary for us to consider the other contentions which the defendant has briefed and argued.

The defendant's exception to the trial justice's denial to strike evidence of the pretrial identifications is sustained, the judgment is reversed, and the case is remitted to the Superior Court.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, for plaintiff.

*Rogers and Sarault, Raymond J. Daniels, Charles J. Rogers, Jr.,* for defendant.