319 A.2d 94.

STATE *vs.* RONALD THORNLEY.

MAY 13, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J. On May 1, 1972, the grand jury returned an indictment charging the defendant, Ronald Thornley, with the crime of assault with a dangerous weapon, and also an indictment charging him with committing a crime of

violence while armed with a firearm. The indictments were consolidated for trial. A Superior Court jury found the defendant guilty on each of the indictments. The defendant is before this court on his appeal.

Roberto Ochoa testified that on March 21, 1972, at approximately 7 p.m. he entered the Royal Palms Cafe in the city of Central Falls. He related that sometime later in the evening he observed defendant near the bar in the cafe. He further stated that he consumed eight or nine beers and as he was putting on his coat prior to departing from the cafe, defendant approached him and "yelled" something at him which he did not understand. According to Ochoa, defendant, using a small gun, then proceeded to shoot him three times in each leg. The victim related that he then left the cafe and was walking on the sidewalk in an attempt to make it to a hospital when he came upon a police patrol car which transported him to the emergency room of the Pawtucket Memorial Hospital.

Mr. Ochoa stated that at approximately 4 or 5 a.m., some four or five hours after being shot, two Central Falls police officers, Robert Choquette and John Fram, came to the hospital and showed him two books of pictures, and that after viewing between 40 to 50 pictures, he identified a picture of defendant as that of his assailant. The victim further related that approximately four or five hours thereafter, the same two police officers returned to the hospital with Edmund J. Fortier, who was to act as interpreter.[1] Mr. Ochoa stated that after viewing some 40 to 50 pictures he again pointed to a picture of defendant, thus identifying him as his assailant, and communicated that fact to the interpreter. The picture selected was marked with the initials of the victim and the inter-

---

[1] At the time of the incident, Ochoa, who had been in the United States for only a short period of time, did not understand or speak English. At the time of trial, his testimony also was given through an interpreter.

preter. At the trial, the trial justice conducted a voir dire hearing regarding procedures used at the identification of defendant in the hospital by the victim. At the conclusion of the voir dire hearing at which Mr. Ochoa and Mr. Fortier testified, the trial justice found that the identification procedures adopted by the police did not violate constitutional standards, and that they complied fully with the standards of fairness.

The defendant, citing the following cases, contends that the procedure used at the pretrial identification was so unnecessarily or impermissibly suggestive that it constituted a denial of his rights under the fourteenth amendment and is therefore grounds for reversal. *Simmons* v. *United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Stovall* v. *Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *United States* v. *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). It is unnecessary for us to consider all the principles in these cases since the rule as espoused by this court in *State* v. *Grenier,* 112 R. I. 498, 313 A.2d 661 (1973), and *State* v. *Ragonesi,* 112 R. I. 340, 309 A.2d 851 (1973), is dispositive of defendant's argument here.

In *Grenier* and *Ragonesi* we held that the rule in *Gilbert* v. *California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), requires that on appeal, we review the record to determine whether or not the procedures utilized in the pretrial identifications were so unnecessarily suggestive and conducive to a mistaken identification as to constitute a denial of due process. In our review of the record, the totality of the circumstances is determinative of whether pretrial procedures were impermissibly suggestive. *Simmons* v. *United States, supra; State* v. *Ouimette,* 110 R. I. 747, 298 A.2d 124 (1972); *State* v. *Souza,* 110 R. I. 261, 292 A.2d 214 (1972).

In accordance with our established procedure, the trial

justice conducted a hearing in the absence of the jury to determine whether the identification procedure used was a violation of defendant's constitutional protection. *State v. Espinosa,* 109 R. I. 221, 283 A.2d 465 (1971); *State v. Leavitt,* 103 R. I. 273, 237 A.2d 309 (1968).

The record discloses that within hours of the shooting the victim, while in the Pawtucket Memorial Hospital, was shown two books of photographs by two police officers, and after viewing 40 to 50 pictures pointed to one of the pictures as that of his assailant. Since he neither understood nor spoke English, the same two police officers returned to the hospital some four or five hours thereafter with an interpreter, and the victim, after viewing approximately 40 to 50 pictures, again identified a picture of defendant as that of his assailant. Edmund J. Fortier, the interpreter, testified that he was present during the second identification and that neither he nor the police officers made any suggestions to the victim nor did they question him during the identification. Mr. Fortier further stated that the victim viewed approximately 50 pictures and then pointed to a picture of defendant and stated that it was a picture of the man who shot him. There is no testimony to even suggest that any improper procedures were used by the police. From the testimony elicited at the voir dire hearing, the trial justice found that the procedures used were constitutionally fair, particularly in view of the fact that the victim looked at 40 to 50 pictures on each of the two occasions he viewed the pictures.

As the record indicates, there is no evidence that the police, in asking Ochoa to identify the photographs, were exerting any suggestive pressure. There was neither highlighting of the pictures nor any statement made to the victim that would indicate any attempt to suggest to him what picture he should identify. The victim had ample opportunity to observe defendant in the cafe before the

shooting, which was done at close range. It is our opinion that the circumstances, when viewed in totality, were not impermissibly suggestive during the course of the pretrial identification.

The defendant next contends that the trial justice erred when at the voir dire hearing he limited the cross-examination of Edmund J. Fortier, who had acted as interpreter at the hospital. The witness in question had already been subjected to cross-examination by defendant, and the request to reopen cross-examination is directed to the discretion of the trial justice. The decision of a trial justice on such a motion will not be disturbed unless it is shown that he has clearly abused such discretion. The defendant has failed to persuade us that the trial justice abused his discretion. We parenthetically note that the same witness was later cross-examined by defendant in the presence of the jury without any restriction by the trial justice.

The defendant next contends that the trial justice erred in refusing to allow the expert medical witness to respond to several hypothetical questions.

It is a well-established rule that the admission of a hypothetical question ordinarily rests within the discretion of the trial justice, and his ruling thereon will not be disturbed on appeal except for an abuse of discretion. *Araujo* v. *Technical Casting Co.,* 100 R. I. 90, 211 A.2d 645 (1965); *Collins* v. *Gabrielle,* 87 R. I. 235, 139 A.2d 874 (1958). A hypothetical question not based on facts in evidence would be inadmissible, and to allow it would be a clear abuse of discretion. The defendant has failed to point out how the trial justice abused his discretion or wherein he was prejudiced, and in our review of the record we have perceived no abuse of discretion by the trial justice.

The defendant next directs our attention to the following testimony, elicited when Robert Choquette of the Central Falls Police Department was being questioned

concerning the return of defendant from New York to Rhode Island:

"Q. And en route to Central Falls, did the defendant volunteer any conversation?

"A. Yes, sir, he did.

"Q. And what was that conversation, as best you recall, Detective?

"A. At one time he asked me what we were bringing him back to the State of Rhode Island for. He said, 'Is it for shooting that nigger?' I said, 'He's not a nigger, he's a Puerto Rican,' and he said, 'The same thing.'

"Q. Was there anything else?

"A. He said, 'You may get me on that, but you'll never get me on The Well.'"

The defendant contends that the admission of such testimony over objection constituted error, since he argues, said testimony was prejudicial in that it suggested to the jury that defendant had other criminal difficulties in addition to the one for which he was being tried.

Since there is no explanation or inference anywhere in the record to indicate what is meant by "The Well," this contention is pure speculation by defendant. We therefore find defendant's contention to be without merit.

The defendant next argues that the trial justice erred when he refused to charge the jury "as to the applicable law regarding evidence of flight." As we have often said, a contention if it is to be meaningful, requires briefing and argument, and a mere challenge without analysis, discussion, or citation of authority is meaningless. The defendant here has merely stated an argument without any analysis or authority therefor. Accordingly, this contention, at least for the purpose of this review, is deemed to have been waived. *State* v. *Carufel,* 106 R. I. 739, 263 A.2d 686 (1970).

Next, defendant contends that the trial justice erred when he allowed the prosecution to reopen the case over objection after defendant had rested and thereby allowed testimony by a police officer that defendant had threatened him in the corridor outside the courtroom. The defendant contends that this testimony had no probative value and was prejudicial to him.

We must determine whether the evidence against defendant was so weighty as to render the admission of the testimony relating to defendant's threatening of Officer Choquette harmless error.

We think that the evidence arising out of the testimony of the victim that defendant was his assailant and that he had been shot six times at close range with a small gun was sufficient to persuade the jury beyond a reasonable doubt that defendant was guilty of the crimes with which he was charged. We are therefore constrained to conclude that if it was error to admit the testimony of the police officer as it related to his being threatened by defendant in the corridor outside the courtroom, that error is rendered harmless by the bulk and nature of the prosecution's case against defendant. *State* v. *Camerlin,* 108 R. I. 524, 277 A.2d 291 (1971).

We next move to the contention that the trial justice commented on defendant's failure to take the stand in his own defense and thereby committed prejudicial error.

We examine the transcript, which is as follows:

"The Defendant: You're a liar. You're a dirty, rotten liar.

"The Court: Ladies and gentlemen, pay no attention to what the defendant said. Pay no attention whatsoever to what the defendant said. Let me remind you, he didn't testify and the only time a witness can contradict another witness is under oath from this stand. The defendant is not under oath; he's not on the stand and put completely out of your minds what he just said."

It is the above statement that defendant construes as a reference to defendant's failure to testify in his own behalf and therefore as prejudicial error.

It is clear that the trial justice's statement is not a comment upon defendant's failure to take the stand in his own behalf, but simply an attempt by the trial justice to advise the jury regarding the outburst by defendant. We therefore are unable to agree that the challenged remark by the trial justice had any prejudicial effect as claimed by defendant. Furthermore, the trial justice in his charge to the jury stated:

> "It follows from what I've just told you, that a defendant need not prove his innocence. The State has the burden of proving guilt beyond a reasonable doubt. Here, the defendant offered witnesses. They come before you, as do all witnesses. Their credibility is for you, but in offering witnesses, the defendant didn't change the burden of proof. The burden is on the State to prove guilt. A defendant need not take the stand to testify, and if he doesn't, you cannot draw any inference unfavorable to him—no unfavorable inference."

On the assumption that the trial justice's remarks could have had a prejudicial effect, we are convinced that the trial justice by the above instructions cured such alleged error, if any there was, and therefore it is our opinion that the language complained of did not constitute prejudicial error.

The defendant's appeal is denied and dismissed, and the case is remitted to the Superior Court.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*William J. Burke, William P. Butler,* for defendant.