376 A.2d 1053.

STATE *vs.* CLAIRE ROBICHAUD.

JULY 25, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an appeal from a judgment of conviction following a jury verdict of guilty on one count of an indictment charging the defendant with robbery and one count of a second indictment charging conspiracy to rob.

On April 26, 1971, two armed men entered the Mason Street building which houses the Department of Employment Security. There they intercepted a courier of International Armored Car Service and robbed him of approximately $66,000 which he was to deliver to the Department. The two robbers made their getaway in a dark blue Cadillac which was subsequently observed on Brayton Street, where two men were seen jumping out of that car. One of the men entered a light-colored car parked on that street and driven by a woman later identified as Claire Robichaud, the defendant.

The first issue raised by defendant concerns the identifying testimony of one Mervin Cronin. On the morning of the robbery Mr. Cronin was looking for a parking space on Brayton Street. He observed a "pretty" woman sitting in the driver's seat of a light-colored Cadillac. Thinking that her spot would soon be available, Mr. Cronin pulled his car over near the corner and waited for her to leave. He was separated from her by another parked car, but he did look at her to see if she was leaving. While he was waiting another car sped down the street and discharged two men, one of who entered the parked Cadillac. That car, with the woman still in the driver's seat, passed Mr. Cronin's vehicle as it drove down the street.

At trial, Mr. Cronin testified to these facts and identified defendant as the woman driver. The state, however, adduced further testimony concerning pretrial identifications made by the witness. When he told police of the Brayton Street events, the witness was shown a number of photographs and identified defendant's as that of the

woman he had seen on the morning of the robbery; he identified her again in a lineup at the police station.

When testimony as to these pretrial identifications was brought out by the state, counsel for the defense moved for a voir dire out of the presence of the jury. This motion was granted. *State* v. *Thornley,* 113 R.I. 189, 319 A.2d 94 (1974). The trial justice, after hearing testimony, found no taint of the pretrial identifications and allowed the testimony to go to the jury. The defendant assigns error to this action and claims admission of this witness' identification of defendant was barred by the per se exclusionary rule of *Gilbert* v. *California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

We have discussed application of that rule in *State* v. *Ragonesi,* 112 R.I. 340, 309 A.2d 851 (1973), where this court said:

> "Essentially, that rule states that the prosecution may not as part of its direct case bolster an in-court identification with testimony of a pre-trial extrajudicial identification at which the accused was denied the right to counsel or due process. To admit such testimony, *Gilbert* further states, will constitute error which, unless rendered harmless by application of the Chapman-Harrington escape valve, will require automatic reversal. And finally the rule provides that proof that the courtroom identification had an independent source will not obviate the necessity for reversal." *Id.* at 343, 309 A.2d at 853.

The question before us, as it was before the trial justice, is whether or not the pretrial identifications made by this witness were tainted by denial of due process.[1] The defendant claims that the totality of the circumstances surrounding both the photo and the in-person identifications

---

[1] Because we find no taint, no discussion of the applicability of *Chapman-Harrington* is necessary to this case. *Harrington* v. *California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman* v. *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

show them to be impermissibly suggestive. We do not agree.

■ The record indicates no suggestive pressure exerted by the police at the time defendant's picture was identified. The defendant's claim rests on the fact that her picture differed from the others displayed. We are not persuaded, however, that this difference amounted to undue emphasis of her image resulting in impermissible suggestion. *United States v. Lincoln*, 494 F.2d 833 (9th Cir., 1974); *United States v. Bell*, 457 F.2d 1231 (5th Cir. 1972); *United States v. Magnotti*, 454 F.2d 1140 (2d Cir. 1972); *State v. Smith*, 165 Conn. 680, 345 A.2d 41 (1974); *State v. Farrow*, 61 N.J. 434, 294 A.2d 873 (1972). Although the photographs used may not have constituted an ideal set, the totality of the circumstances suggest no denial of due process. *Simmons v. United States*, 390 U.S. 377, 385-86, 88 S.Ct. 967, 972, 19 L.Ed.2d 1247, 1254 (1968).

■ The defendant claims also defects in the lineup at which the witness again identified her. From the record it would appear that the defense objected mainly to the fact that defendant was the only "pretty" woman of slight build in the lineup. It is significant to note, however, that the witness, when examined by the defense in voir dire, expressed the belief that all the women in the lineup were "pretty" and only one had a "few more pounds." Since it was the witness who first described the woman driver he had observed as "pretty," thus including this attribute as a descriptive factor, it is his standard of measurement, not that of the defense, by which we may judge the lineup presented to him. The record before us displays no indication of objective disparity between defendant and others in the lineup, and by the witness' subjective criteria, no significant disparity existed. *United States v. Hines*, 455 F.2d 1317, 1329 (D.C. Cir. 1971). Again, the

totality of the circumstances demonstrate no impermissible suggestion. *Simmons* v. *United States, supra.*

The defendant claims further error in the trial justice's refusal to direct a prosecution witness to reveal her place of employment and the name of her school. While such inquiries are normally acceptable on cross-examination, they may be limited for the protection of the witness. This witness was in protective custody during her court appearance. She testified extensively as to her background and life style, thus affording a well-rounded view of the witness. The only restriction on defendant's cross-examination occurred with regard to those elements through which she might be traced. Further, defendant has demonstrated neither a need for this information nor any harm from its exclusion. We find no error in this application of the "personal safety" restriction of cross-examination. *State* v. *Capone,* 115 R.I. 426, 347 A.2d 615 (1975); *State* v. *Ciulla,* 115 R.I. 558, 351 A.2d 580 (1976).

The defense offered as a witness one Keigney who testified that he and his friends, not those charged by the state, had committed the robbery. Keigney refused to identify those friends and as a result was cited for contempt by the trial justice. The defense claims this was error in that it occurred in the presence of the jury and was repeated for his refusal to answer the same questions.

While with hindsight it appears that his refusals covered only the identities of those he claimed participated in the robbery, this was not articulated by the witness at trial. He did not "carve out" a clear area of refusal, *Yates* v. *United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). We are not shown that the prosecutor's questioning was an attempt to or had the effect of multiplying the contempts. The state questioned Keigney about a number of individuals who were referred to by the witness only by pronoun. It was not always possible to discern which

690

individual the witness was refusing to identify. Where, in clear terms, the witness refused for a second time to identify one of these individuals, no second contempt resulted. No attempt was made to repeat inquiries about members of a then discernible class since the witness' refusals were stated in terms of the individuals and no general refusal as to a class was made. Similarly, the trial justice's notice of contempt when the witness refused to identify each individual was warranted; Keigney was not cited for subsequent references to individuals he had refused to name.

"The management of the trial rests with the judge and no party can be permitted to usurp that function." *Yates* v. *United States, supra* at 73, 78 S.Ct. at 133, 2 L.Ed.2d at 101. While such occurrences as these contempt citations are not welcome additions in any jury trial, it may be necessary to tolerate their presence rather than injure the dignity of the court. The court in *Preston* v. *Commonwealth,* discussing the fining and sentencing, in the presence of the jury, of the defendant's contempt said:

> "The judge has both the right and duty to preserve decorum, and to do it promptly and publicly when it appears reasonably necessary or appropriate. He must have a wide discretion in this regard, and he is in the best position to determine what course of action is indicated by the attendant circumstances." *Preston* v. *Commonwealth,* 406 S.W.2d 398, 404 (Ky. 1966), *cert. denied,* 386 U.S. 920, 87 S.Ct. 886, 17 L.Ed.2d 792 (1967).

The trial justice in the instant case expressed no opinion of the witness in the course of his testimony. No reasonable inference of damage or prejudice to defendant can be made from the actions complained of here. We do not find the actions of the trial justice clearly wrong and so will not disturb rulings made within his discretion.

Keigney's testimony brought about yet another action to which defendant assigns error. She questions the pro-

priety of the state's request, in the jury's presence, for a bench warrant against Keigney on the charge of carrying a gun without a license[2] and assigns error to the request on the grounds that it was not proper impeachment of the witness because it is an "attempt * * * to discredit by means of purported misconduct short of a conviction." It must be noted that the defense called this witness for the very purpose of his testifying to his misconduct. Further, we note that the bench warrant complained of was the second to issue against Keigney. The first issued moments after he took the stand; when asked where he was on the morning of the robbery, Keigney testified that he was "[r]obbing an employment place" in Providence.

The information Keigney acknowledged or volunteered from the stand — a long string of prior convictions; the fact that at the time he testified he was serving a 20-year sentence for armed robbery; and the fact that the robbery to which he "confessed" on the stand occurred while he was on an unauthorized absence (following escape) from jail — all contributed to this witness' impeachment. In these circumstances we find no merit in defendant's claim of prejudice from the issuance of the bench warrant against Keigney where defendant had sought his testimony on the very conduct for which he was charged.

The defendant next claims that testimony of a prosecution witness was so prejudicial as to preclude the possibility of a fair trial. The testimony reads as follows:

"Q  Now, did you meet Claire first, or did you meet John first?

"A  I met Claire first, three years ago.

"Q  Where did you meet her?

"A  When she came looking for the apartment.

"Q  And she moved in alone?

---

[2] As Keigney describes it, he carried this gun during the robbery.

"A No. She moved in with Roche.[3]

"Q And when did Mr. Robichaud move in?

"A He moved in the day after Roche was shot. That's all I can remember; the day after he was shot."

The jury was immediately removed on request of Mr. Robichaud's counsel, and the question of prejudice to him was argued. The state's counsel stipulated that Mr. Roche had not died as a result of this shooting and that Mr. Robichaud had not been charged in connection with the incident. The jury then returned to be carefully instructed to disregard this reference. Both at trial and on appeal the issue raised concerned prejudice only to John Robichaud. No prejudice to Claire Robichaud has been shown, *State* v. *Rezendes,* 111 R.I. 169, 300 A.2d 472 (1973), and we find none.

The defendant raises several other claims of error. While we do not here discuss them, they have been examined by the court and found to be without merit.

The defendant's appeal is denied and dismissed.

Mr. Chief Justice Bevilacqua did not participate.

*Julius C. Michaelson,* Attorney General, *Nancy Marks Rahmes,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline, Joseph A. Bevilacqua, Jr.,* for defendant.

---

[3]The defendant was then married to Mr. Roche; her marriage to Robichaud came later.