STATE

v.

Tony M. IVY.

No. 88–296–C.A.

Supreme Court of Rhode Island.

May 17, 1989.

James E. O'Neil, Atty. Gen., Annie Goldberg, Nicholas Trott Long, Asst. Attys. Gen., for plaintiff.

Barbara Hurst, Asst. Public Defender, for defendant.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant, Tony M. Ivy, from a judgment of conviction following a jury trial in Superior Court for robbery. The facts of the case insofar as pertinent to this appeal are as follows.

On January 9, 1987, Charles Wellington, a taxicab driver for Cozy Cab taxi service, was parked in Washington Square, Newport, Rhode Island. At about seven o'clock that evening, two black men entered the cab, sat in the back seat, and requested that they be brought to Paquin Place in Middletown, Rhode Island.

The dome light[1] was on as the two men entered the cab, which enabled Wellington to observe both men. Wellington's view of

---

1. The dome light in the taxi is situated in the front of the cab and has an elongated high voltage bulb.

the man who sat directly behind him was obstructed by the front seat head rest. Through the rear-view mirror, Wellington was able to observe defendant, who sat on the right-rear passenger side of the cab. During the trip to Middletown, which took approximately ten minutes, the three men conversed freely, and as a result Wellington glanced "several times" at defendant through the rear-view mirror.

When the men reached their destination in Middletown, Wellington stopped the cab, put the dome light on, and announced the fare. The defendant handed Wellington a $10 bill. As Wellington was about to make change, there was a "scuffle in the cab" and a wire rope was wrapped around his chest, securing him tightly against the front seat. One of the men, later identified as defendant, extinguished the dome light and pulled the microphone out from the taxi radio. The defendant then reached into the front seat and turned off the ignition. In response to the demand of the two men, Wellington handed them the money he had in his possession, which amounted to between $50 and $70. At that point defendant produced a gun and pointed it at Wellington. The defendant did not fire the weapon, although he was urged to do so by his accomplice, and the two men then left the cab.

Wellington reported the incident to the Middletown police. In his report to the Middletown police, Wellington described defendant and his accomplice as black men "in their early twenties, both of average height, weight and build, and both wearing dark colored clothing." The report also stated that one of the suspects (defendant) was wearing a black hood over his head and appeared to have a small face. It is important to note that in his report Wellington failed to make any mention whatsoever concerning whether either of the suspects had any facial hair.

It was this report that Detective Corporal David Edes relied upon, along with information from the Newport police department, in arranging the photographic array. The Newport police department was contacted because the Middletown police were aware that there had been reports of similar taxicab robberies in Newport.

Five days after Wellington reported the robbery, the Middletown police presented him with a photographic array consisting of six photographs of black men. Four of the photographs were of men who wore facial hair, and the photographs of the remaining two were of men, including defendant, who were clean-shaven. Also, in the background in defendant's picture there were dark, parallel, horizontal height lines. The other five photographs contained plain, light-colored backgrounds. All six of the pictures primarily displayed the faces of young black men, and almost totally excluded their shoulders. The photographs were fairly representative of men between twenty and thirty years of age. Wellington positively and promptly identified defendant's picture from the array as the man who had sat on the right passenger side in the back seat of the cab.

In January of 1988 defendant made a pretrial motion to suppress Wellington's identification on the grounds that the photographic array "was unnecessarily suggestive and did not meet constitutional standards of fairness." A hearing was held on January 13, 1988 before a justice of the Superior Court, who denied the motion to suppress the identification.

The sole issue presented in this case is whether the photographic array was presented by the Middletown police in a manner that was unnecessarily suggestive. The defendant on appeal argues that the trial justice erred in denying his motion to suppress in that his photograph, as included in the six-picture display, was unduly distinctive and thus inadequate to guarantee a fair and trustworthy identification. Specifically, defendant argues that the array was effectively reduced to two individuals, defendant and another man, because the array included photographs of four men who had either goatees or mustaches, and because Wellington testified at the suppression hearing that he could only remember that defendant had a thin, clean-shaven face. The defendant cites for authority *State v. Grenier*, 112 R.I. 498, 313

A.2d 661 (1973), where we held that an identification procedure of a defendant made among three persons, one of whom the victim knew to be a police officer, was unfair and violative of the defendant's right to due process under the Fourteenth Amendment to the United States Constitution. The defendant here also contends that the array was unduly suggestive because his picture was the only one that had dark horizontal height lines in the background, a circumstance that he urges gives the photograph the appearance of being a mug shot. We disagree.

The admissibility of an out-of-court identification is determined according to a two-pronged analysis. First, a determination must be made about whether the photographic array was suggestive. If answered in the affirmative, the court must then look to the totality of the circumstances surrounding the photographic identification to assess its reliability. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977); *State v. Lemon*, 478 A.2d 175 (R.I.1984).

The defendant contends that the photographic array was unfair in that Wellington's choice was reduced to two clean-shaven individuals, defendant and another man, because the remaining four wore facial hair. This contention lacks merit. Upon examining the photographs, the trial justice stated in his decision that "each of the photographs compiled by the officer distinctly points out the facial features." Also, the fact that the report given to the Middletown police by Wellington regarding the suspects' description was silent as to the existence or absence of facial hair, strongly supports the nonsuggestiveness of the photographic array. If Wellington had initially provided the Middletown police with a description of the suspects as clean-shaven, the fact that the photographic array included four photos of men with facial hair would have made defendant's contention of suggestiveness more persuasive.

The trial justice, in denying defendant's motion to suppress, closely scrutinized the photographic array. To this end the trial justice carefully and thoroughly questioned both Detective David Edes, who conducted the array, and Wellington. Upon hearing the testimony regarding the same, the trial justice deferred until the following day the rendition of his decision in order "to determine from not only the verbal testimony, but from the array itself" if the identification procedure "passe[d] constitutional muster and [was] not unduly suggestive."

The trial justice found as a fact that the photographic array was not unduly suggestive in the manner in which it was presented, nor was there any suggestive verbal communication prompting Wellington in his identification. The trial justice observed that the photographs were "all of black males" and were "fairly representative of [men] between the ages of twenty and thirty." As stated above, the trial justice also noted that the views were uniform in that "each of the photographs compiled by the officer distinctly points out the facial features, that is, the heads almost to the complete exclusion of the shoulder areas." As far as the horizontal lines appearing exclusively in defendant's photograph were concerned, the trial justice found nevertheless that "the prominent feature of each" photograph was "the face of each of the individuals." The trial justice found and concluded that although the horizontal lines appeared in the background of defendant's photograph, "Mr. Wellington gave them no significance as part of his identification and they might to an untrained eye appear to be the slats in a venetian blind." In making this determination, the trial justice explained:

"I am convinced that the identification was not influenced by the fact that the lines appear behind the head of this defendant. I rely upon the spontaneity of the answer given by Mr. Wellington that he didn't know what those lines meant; that what he identified was the head."

We affirm the finding of the trial justice that the photographic array was not unduly suggestive. Utilizing the general description given by the victim, Detective Edes prepared a photographic display of six young black men between twenty and thirty years of age. Nothing known to the

police at the time tended to highlight defendant as the suspect to be selected. The trial justice was correct in determining that this array was not so suggestive as to lead to an inevitable likelihood of misidentification in violation of defendant's due process rights under the Fourteenth Amendment.

 Accordingly we need not proceed to the second prong of the analysis in regard to the reliability of the out-of-court identification.[2]

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the case is remanded to the Superior Court.

2. Had we proceeded to the reliability analysis set forth in *Mason v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), we would have concluded that: (1) Wellington's opportunity to view the defendant during the cab ride as well as during the commission of the crime, (2) his degree of attention, (3) the accuracy of his prior description of the defendant, (4) his level of certainty demonstrated at the confrontation of the photographic array, and (5) the shortness of time between the crime and the viewing of the photographs, would all have made this identification extremely reliable.