## JOHNNY PERKINS *v.* STATE OF MARYLAND

[No. 340, September Term, 1970.]

*Decided March 31, 1971.*

The cause was argued before MURPHY, C.J., and MORTON and POWERS, JJ.

*Thomas P. Smith,* with whom were *Karl G. Feissner, William L. Kaplan, Fred R. Joseph,* and *Andrew R. Greenwald* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's*

*County,* and *Robert W. King, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was found guilty by a jury of robbery with a deadly weapon and carrying a deadly weapon openly with intent to injure; he was sentenced to fifteen years imprisonment. On appeal, he contends that the trial judge erred "in admitting an in-court identification which was based upon tainted evidence, without a proper hearing."

No pretrial motion to suppress or exclude identification evidence was made by appellant prior to trial. Michael Donahue testified as a State's witness that at 9:30 p.m. on December 11, 1969 he was working as a cashier at a drug store when a Negro man, armed with a gun, robbed him of approximately $80.00. Donahue described the robber and identified a scarf and hat which he said were worn by him at the time of the crime. Donahue was then asked by the prosecutor whether he saw the man who robbed him in the courtroom. The appellant objected, and a bench conference was held out of the jury's presence, at which time appellant told the trial judge that he believed any identification made by Donahue would be "based on tainted evidence of an identification previously obtained" in that "pictures for identification that were presented to this man to make identification were tainted, under the *Wade* rule [*United States v. Wade,* 388 U. S. 218]." In response, the prosecutor told the court that appellant had fled the robbery scene in a car; that the car had struck a curb and appellant ran away; that subsequently, the car was removed to police headquarters and a driver's license containing a picture was found therein; that witnesses were present at the time the license was removed from the car; that the license containing the picture was shown to Donahue at the time it was removed from the vehicle; and that *Wade* was not applicable because "he [appellant] left the driver's license in the car himself." The court expressed the belief

that *Wade* was not applicable because a lineup was not involved and what the State was seeking to introduce was not the extrajudicial photographic identification but an in-court identification. Appellant responded that *Wade* was applicable because "identification is made from a single photograph." The court overruled appellant's objection to the in-court identification and Donahue identified appellant as "the man that robbed me that night." On cross-examination, it was established that Donahue had made an identification of appellant on the night of the robbery. Asked how he identified him, the prosecutor objected and the court sustained the objection on the ground that the question went beyond the scope of the direct examination. Appellant next developed that Donahue was present at his arraignment, sitting thirty-five feet from him, and that he identified him at that time. Continuing with his cross-examination of Donahue, appellant again inquired concerning the extrajudicial photographic identification, and also sought to ascertain whether Donahue had ever attended a pretrial lineup. The court sustained the prosecutor's objection to this line of questioning.

James Martinez, a customer in the drug store at the time of the robbery, testified for the State that he was two feet away from the robber when Donahue was held up. Asked by the prosecutor whether he could make an in-court identification of the robber, the appellant again objected. The court then asked the witness whether his identification would be based on what he observed at the time of the robbery. Martinez replied that it would be, and the court overruled appellant's objection. Martinez identified appellant as the robber. On cross-examination, appellant attempted to show that this in-court identification, like that made by Donahue, was tainted by an extrajudicial photographic identification. Again the prosecutor objected; at the ensuing bench conference he told the court that Martinez had never seen the photograph. Appellant again indicated to the court that he wanted to show that Martinez's in-court identification was based on

his extrajudicial viewing of appellant's photograph. The court sustained the prosecutor's objection on the ground that the questions exceeded the scope of the State's direct examination. Undaunted, appellant continued to seek a response from Martinez concerning whether he had ever seen a photograph of appellant; the witness answered at one point that he was shown no photographs immediately after the commission of the robbery. Appellant next asked Martinez whether he had ever had occasion to later identify the appellant. The court sustained the prosecutor's objection and advised the appellant that the court could not insist that the State introduce the photograph in evidence.

Another customer in the store, Julius Becker, testified for the State that after the holdup he ran from the store, looked in an automobile parked some thirty feet away, and observed a man hiding therein. He observed the man's face under lighting conditions which he described as good. Asked by the prosecutor whether he could make an in-court identification of the robber, the appellant objected, again on the same ground. The court overruled the objection and Becker identified the appellant as the man he observed in the vehicle. He also testified that appellant drove away from the parking lot, struck a curb, abandoned the car, and fled on foot.

Detective Raymond Daniels testified that he processed the suspect's vehicle and found a hat and a scarf in it. At this point, another bench conference was called and a discussion followed concerning the picture on the driver's license, which the prosecutor told the court was of appellant. The prosecutor told the trial judge that only one of the witnesses (presumably Donahue) had seen the picture; that the other two men (presumably Martinez and Becker) had not seen it. When it appeared that the State was going to introduce the picture in evidence, the trial judge cautioned against it, and the picture was not introduced.

Appellant and two witnesses on his behalf testified that

they were playing poker together at the time the crime was committed.

We think it apparent that neither the court nor the prosecutor fully appreciated the proper application of the principles enunciated in the so-called *Wade* trilogy of opinions,[1] and their "photographic viewing" offspring, *Simmons v. United States*, 390 U. S. 377, as deciphered by us in *Smith and Samuels v. State*, 6 Md. App. 59, and its progeny.[2] To again restate those principles would serve no useful end. We think it sufficient to note in this case that appellant timely asserted his right to challenge the admissibility of the prospective in-court identifications of him by the State's witnesses Donahue, Martinez, and Becker; and that appellant's objection thereto was plainly rooted in the Fourteenth Amendment ground that such identifications would or might be tainted by reason of the extrajudicial viewing by the witnesses of a photograph of him under circumstances which were so impermissibly suggestive and conducive to irreparable mistaken identification as would constitute a denial of due process of law.[3] Appellant was thus clearly entitled as a matter of absolute right under *Smith and Samuels* to an evidentiary hearing out of the presence of the jury, and a determination by the trial judge of the question raised by the objection, namely, whether under the circumstances the extrajudicial viewing of the photograph constituted an illegal pretrial confrontation tainting the prospective in-court identifications because violative of the Fourteenth Amendment.[4] To deny appellant his absolute right

---

1. *United States v. Wade, supra; Gilbert v. California*, 388 U. S. 263; and *Stovall v. Denno*, 388 U. S. 293.

2. See, for example, *Jones v. State*, 10 Md. App. 420; *Billinger v. State*, 9 Md. App. 628; *Dorsey v. State*, 9 Md. App. 80; *Mouzon v. State*, 9 Md. App. 57; *Cook v. State*, 8 Md. App. 243; *Coleman v. State*, 8 Md. App. 65; *Joyner v. State*, 7 Md. App. 692; *Bailey v. State*, 6 Md. App. 496.

3. While appellant referred only to the *Wade* case in stating the basis and authority for his objection, we think it too obvious to require discussion that both court and prosecutor understood that appellant was referring to and relying upon the *Wade* trilogy of opinions and on *Simmons v. United States, supra*.

4. Had appellant been able to make a *prima facie* showing of il-

to a *"Smith and Samuels"* type hearing constituted clear error, not only because it precluded him from an opportunity to show that the pretrial photographic viewing procedure was illegal, but also because it in effect constituted a ruling, based on an insufficient evidentiary foundation, that the in-court identifications were not tainted and would, without more, be admitted in evidence before the jury. *See Miller v. State,* 7 Md. App. 344.

We cannot sanctify the violation of appellant's rights in this case by subscribing to the State's arguments that it didn't really matter because appellant produced no evidence that the photographic viewing was illegal and hence did not carry his burden of showing, *prima facie,* the illegality of the pretrial confrontation; or that even if the photographic viewing procedure was illegal, nevertheless the State adduced evidence at the trial showing that the in-court identifications were based upon an independent source; or that the extrajudicial photographic identification procedure was in fact legal. None of these arguments overcome the stark fact that the court wholly precluded appellant from undertaking to make the requisite preliminary *prima facie* showing that the pretrial photographic viewing procedure violated due process of law and so tainted the prospective in-court identifications as to render them inadmissible in evidence.[5] By so completely circumscribing the appellant's opportunity to make such a frontal attack on the admissibility of the prospective in-court identifications, no evidence of the circumstances under which appellant's photograph was

---

legality, the burden would have then shifted to the State to prove to the trial judge, by "clear and convincing" evidence, that the confrontation was legal. Of course, even if the pretrial identification procedure was found illegal, the State would still be entitled to show, if it could, that the in-court identification would be based on a source independent of the illegal confrontation. *Smith and Samuels v. State, supra.*

5. The fact that the prosecutor did not introduce or intend to introduce evidence of the extrajudicial identification as part of his case does not inhibit the right of the accused to show that the prospective in-court identification was inadmissible in evidence since it was prejudicially inspired by the illegal pretrial confrontation.

viewed is contained in the record. *Compare Bailey v. State, supra.* However likely it may be that the exhibiting of appellant's photograph to the witnesses shortly after the crime did not constitute an illegal confrontation (*see Smith and Samuels v. State, supra; Billinger v. State, supra,* and *Spencer v. State,* 10 Md. App. 1), we are unwilling to conclude on the record before us that the court's refusal to permit appellant to explore the circumstances surrounding that identification was harmless error beyond a reasonable doubt under *Chapman v. California,* 386 U. S. 18. Since in Maryland, the positive identification of the accused as the criminal agent, if believed, is alone sufficient to justify a conviction, *Wilkins v. State,* 5 Md. App. 8, identification evidence is particularly critical in a case like the present where no evidence of the appellant's guilt independent of the eyewitness identifications is presented to the jury, and three defense witnesses give alibi testimony which, if believed, would establish appellant's complete innocence.[6] And while there may be cases where the record plainly shows that the in-court identifications are based upon a source independent of the pretrial confrontation, we cannot, in the absence of any showing of the circumstances under which the photograph was exhibited, say that this is such a case.

Appellant also sought to cross-examine the State's witness concerning the circumstances under which they may have seen him at a pretrial lineup and at arraignment. This avenue of legitimate interrogation was erroneously foreclosed by the court on the ground that it exceeded the scope of direct examination. In *Smith and Samuels* and in *Bailey* we observed that even when an in-court identification is properly found to be admissible, the accused is entitled to bring out the circumstances surrounding a pretrial identification in order to affect the weight of the

---

6. No independent evidence was adduced showing that appellant owned or was otherwise connected with the car in which his photograph was found, or with the scarf or hat also found in the vehicle.

identification evidence and the credibility of the identifying witnesses, matters for the trier of fact.

So completely was appellant denied his right to meaningfully challenge the admissibility of the in-court identifications, or to affect their weight by challenging on cross-examination the credibility of the identifying witnesses, that we deem it essential that a new trial be ordered.

*Judgments reversed; case remanded for a new trial.*