404 A.2d 465.

STATE *vs.* DONALD PORRARO.

JULY 18, 1979.

PRESENT: Joslin, Kelleher, Doris and Weisberger, JJ.

Doris, J.   In the early morning hours of October 4, 1975, while leaving the Gallery Lounge in Providence with his wife Deborah, Gary Charron was shot. Three months later he died from the wounds inflicted by the gunshot. The defendant, Donald Porraro, was apprehended and charged with the crime. After a jury trial in the Superior Court, the defendant was found guilty of manslaughter and possession of a firearm after a previous conviction of a crime of violence. The defendant's motion for a new trial was thereafter denied, and he was sentenced to 20 years at the Adult Correctional Institutions on the manslaughter charge and 10 years at the ACI on the firearm charge, the sentences to run consecutively. In this appeal the defendant raises numerous assignments of error, the most important ones of which concern rulings of the trial justice regarding Deborah Charron's identification of the defendant as the person who shot her husband.

I

In her direct testimony Deborah Charron stated that on the evening of the shooting, she went with her husband and several friends to the Gallery Lounge. While she was dancing, a man approached her and made an offensive remark about her cousin who was also in the lounge. She observed this person for two or three minutes at a distance of approximately three feet. Later that evening, as she was leaving the lounge with her husband, the same man approached her. She testified that he punched her in the face and then pointed a gun at her husband. As her husband began to run away, he was shot. Deborah Charron described the man who shot her husband as being 5 feet 8 or 9 inches in height, and having dark hair and a dark complexion. She stated that he was wearing a sleeveless "muscle shirt" and

had tattoos on his arm. When the prosecutor asked her whether the person whom she had described was in the courtroom, defendant's counsel objected and the jury was excused. Defense counsel then stated that because Deborah Charron had made pretrial lineup and photographic identifications of defendant, he requested an evidentiary hearing outside the presence of the jury to determine whether the proffered in-court identification was tainted by any alleged illegality at the pretrial confrontations. The prosecutor assured the trial justice that the extra judicial identifications were not impermissibly suggestive in violation of constitutional standards[1] and that he did not intend actually to introduce the out-of-court identifications. Without hearing any testimony concerning the circumstances of the lineup or photographic display, the trial justice denied defendant's request for a voir dire, stating that he was satisfied that the in-court identification was independently derived from the witness' observations at the Gallery Lounge. When the jury returned, Deborah Charron identified defendant as the person who shot her husband. The defendant asserts that he had an absolute right to a voir dire hearing on the issues of possible taint and independent source and that the trial justice's refusal to grant him such a hearing constitutes reversible error.

In *Stovall* v. *Denno*, 388 U.S. 293, 301-02, 87 S. Ct. 1967, 1972, 18 L. Ed. 2d 1199, 1206 (1967), the Supreme Court first declared that a pretrial lineup may be so unnecessarily suggestive and conducive to an irreparable mistaken identification as to amount to denial of due process. In such a case the lineup identification is inadmissible in the ensuing trial. This "fairness" standard has been subsequently refined so that an unnecessarily suggestive pretrial identification is inadmissible only if it is unreliable. *See Manson* v. *Brathwaite*, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140, 154 (1977). Whether the identification pro-

---

[1]The defendant did not argue at trial, and does not contend in this appeal, that the pretrial identifications violated his sixth amendment right to counsel.

cedure amounted to a denial of due process depends upon the totality of the circumstances surrounding it. *See State* v. *Thornley*, 113 R.I. 189, 192, 319 A.2d 94, 96 (1974); *State* v. *Ouimette*, 110 R.I. 747, 767, 298 A.2d 124, 137 (1972).

An analogous rule applies to instances of pretrial photographic identification. In *Simmons* v. *United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971, 19 L. Ed. 2d 1247, 1253 (1968), the Court stated:

> "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside * * * only if the photographic identification procedure was so impermissably suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

If either the lineup or photographic identification of the defendant was obtained in contravention of the due process clause, a subsequent in-court identification is still admissible if the prosecution proves by clear and convincing evidence that is based upon a sufficient independent recollection of the event. *State* v. *DeMasi*, 118 R.I. 494, 498, 374 A.2d 806, 808 (1977); *cf. United States* v. *Wade*, 388 U.S. 218, 240, 87 S. Ct. 1926, 1939, 18 L. Ed. 2d 1149, 1164 (1967). Admission of the in-court identification without first determining that it was not tainted by the illegal pretrial identification, but came instead from an independent source, is constitutional error. *Gilbert* v. *California*, 388 U.S. 263, 272, 87 S. Ct. 1951, 1956, 18 L. Ed. 2d 1178, 1186 (1967). The issue posed by this appeal is whether, given these settled constitutional principles, a trial justice *must* conduct an evidentiary hearing outside the presence of the jury whenever a potential *Stovall-Simmons* problem arises during trial.

The state initially argues that, although the trial justice did not so base his decision, defendant was not entitled to a voir dire hearing because he failed to file a pretrial motion for suppression of the identification testimony. The state relies upon our opinion in *State* v. *Maloney*, 111 R.I. 133, 144, 300 A.2d 259, 265 (1973), where we held that all efforts to sup-

press evidence must be by pretrial motion. If *Maloney* applies, it is only by analogy, however, because that case was concerned with evidence allegedly obtained in violation of the fourth amendment proscription against unreasonable searches and seizures.

In the instant case defendant was cognizant of the extra-judicial identifications before the trial commenced. Therefore, this was not a case in which his request for a voir dire was prompted by a revelation during the course of the trial. While we believe it would have been more expeditious had defendant made a pretrial motion to suppress, we nevertheless believe that, in the circumstances of this case, *Maloney* should be restrictively applied; and accordingly we hold that defendant's request for a voir dire hearing was timely.

[6]  The state's next contention is that defendant was adequately protected by his right to cross-examine the witness concerning her out-of-court identifications. As a tactical matter, defendant chose not to pursue the issue on cross-examination. The state's argument misconstrues the import of the *Wade-Gilbert-Stovall* trilogy and its progeny. Prior to the Supreme Court pronoucements in 1967, identification testimony was tested, as is all evidence, through the vehicle of cross-examination. The Supreme Court determined, however, that constitutional considerations warranted the creation of exclusionary rules. As was stated in *Foster* v. *California*, 394 U.S. 440, 442 n.2, 89 S. Ct. 1127, 1128 n.2, 22 L. Ed. 2d 402, 406 n.2 (1969):

> "The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. But it is the teaching of *Wade, Gilbert,* and *Stovall, supra* that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law."

Here, the trial justice was confronted in the first instance

with a question of *admissibility*, not *mere credibility*. In such a case, cross-examination alone is an insufficient safeguard.

The state further argues that the decision whether to conduct a voir dire, with its consequent disruption of the trial, resides solely in the trial justice's discretion and that in this case there was no abuse of discretion. The seminal case in this area is *Clemons* v. *United States*, 408 F.2d 1230 (D.C. Cir. 1968), wherein the District of Columbia Court of Appeals formulated procedural guidelines for cases in which identification problems are presented. *Id.* at 1237. These guidelines clearly recommend that an evidentiary hearing be conducted in such a case as this.[2] We first approved of the *Clemons* guidelines in *State* v. *Ragonesi*, 112 R.I. 340, 344-45 n.4, 309 A.2d 851, 853-54 n.4 (1973). *See State* v. *DeMasi*, R.I. at 118, 374 A.2d at 808; *State* v. *Benoit*, 117 R.I. 69, 78, 363 A.2d 207, 213 (1976). The state contends, however, that *Ragonesi* merely suggested an optimal procedure but did not impose a mandatory obligation upon trial justices.[3]

There has been considerable litigation concerning the question of under what circumstances a voir dire hearing is required on the issue of taint upon an in-court identification from allegedly illegal pretrial identifications. The cases reflect a wide divergence of opinion. At one extreme are

---

[2]    "Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pretrial identification by the same eyewitness is violative of due process or the right to counsel. If a violations is found, the court should then decide whether the in-court identification is still admissible because it has an independent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event." *United States* v. *Clemons*, 408 F.2d at 1237, *quoted in State* v. *Ragonesi*, 112 R.I. 340, 344-45 n.4, 309 A.2d 851, 853-54 n.4 (1973).

[3]Our opinion in *State* v. *Ragonesi*, 112 R.I. 340, 309 A.2d 851 (1973), does not directly control the instant case. In *Ragonesi* the state attempted to bolster the witness' in-court identification be introducing the extra judicial identification as part of its direct case. As we noted in *Ragonesi*, the per se exclusionary rule announced in *Gilbert* v. *California*, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967), foreclosed such action. *See* 112 R.I. at 343, 309 A.2d at 853. The instant case does not present a *Gilbert* problem.

those jurisdictions which unequivocally state that a defendant has an absolute right to an evidentiary hearing outside the jury's presence whenever an identification issue is raised. *See, e.g., Moore* v. *Commonwealth,* 569 S.W.2d 150, 153 (Ky. 1978); *Francis* v. *Commonwealth,* 468 S.W.2d 287, 293 (Ky. App. 1971); *Perkins* v. *State,* 11 Md. App. 527, 531, 275 A.2d 517, 520 (1971); *People* v. *Anderson,* 389 Mich. 155, 169 & n.3, 205 N.W.2d 461, 466 & n.4 (1973); *State* v. *Williams,* 258 S.C. 482, 485, 189 S.E.2d 299, 300 (1972); *State* v. *Pratt,* 244 S.E.2d 227, 234-35 (West Virginia, 1978). Other courts have intimated that such an absolute right exists. *See, e.g., United States ex rel. Ragazzini* v. *Brierley,* 321 F. Supp. 440, 444 (W.D. Pa. 1970); *People* v. *Faulkner,* 28 Cal. App. 3d 384, 391, 104 Cal. Rptr. 625, 629 (1972); *State* v. *Accor,* 277 N.C. 65, 79, 175 S.E.2d 583, 592 (1970); *David* v. *State,* 467 P.2d 521, 523 (Okla. Crim. 1970). At the other extreme are cases in which the courts have held that the decision whether to conduct a voir dire is left to the discretion of the trial justice. *See State* v. *O'Connor,* 87 S.D. 77, 81, 203 N.W.2d 183, 186 (1973). In between lies the weight of authority which holds that a defendant is entitled to an evidentiary hearing outside the presence of the jury only if he has made an initial showing of possible taint from the preliminary identification procedure. *See, e.g., Hill* v. *Wyrick,* 570 F.2d 748, 751 (8th Cir. 1978) (more than mere conclusory allegations); *United States ex rel. Fisher* v. *Driber,* 546 F.2d 18, 22 (3d Cir. 1976) ("nonfrivolous" request); *United States* v. *Allison,* 414 F.2d 407, 410 (9th Cir. 1969) ("sufficient" motion). One of the most cogent discussions of this issue is contained in *United States* v. *Cranson,* 453 F.2d 123 (4th Cir. 1971). In *Cranson* the trial justice denied the defendant's request for a voir dire hearing to inquire into whether there may have been such improper pretrial identification procedures that a due process claim should be sustained on an in-court identification. *Id.* at 125. Explicating the relevant standard, the court stated:

> "At the very least there would have to be statement that there has been a pre-trial photographic or lineup identi-

fication or other type of identification confrontation before the motion for an evidentiary hearing should be entertained; in short, there should be some showing that 'a *Simmons* issue is present.'

* * *

"At a minimum [the defendant] must establish that there has been pre-trial identification as a predicate for a motion for an evidentiary hearing outside the presence of the jury. Any other rule would mean that whenever courtroom identification testimony is offered the defendant could force an interruption of the trial, whether there is any justification or not and whether his motion is timely or not. Such a rule, so fraught with opportunity for needless and wasteful trial delays, cannnot be countenanced." *Id.* at 127, 128.

Because there is a clear preference that a defendant be afforded an opportunity to probe into the fairness of out-of-court identifications, we believe that the "minimum showing" standard as outlined in *Cranson* correctly balances the competing interests and accordingly adopt it.

Applying this standard to the instant case, we feel there is no doubt that defendant made an adequate showing and therefore the trial justice erred when he denied the motion for an evidentiary hearing. The defendant stated that the witness had made a photographic and lineup identification of him. He specifically stated that the purpose of the voir dire would have been to probe into the fairness of these identifications to insure that the *Simmons* standard was satisfied. That standard having been met, the trial justice was required to conduct the kind of hearing contemplated in *State* v. *Ragonesi*, 112 R.I. at 344-45 n.4, 309 A.2d at 854 n.4.

The state argues that the trial justice's failure to hold an evidentiary hearing outside the presence of the jury was harmless error because the witness' in-court identification clearly had an independent source. We cannot agree. In *Chapman* v. *California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1967), the Supreme Court stated

that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." In applying this test we must, as the Court noted in *Harrington* v. *California*, 395 U.S. 250, 254, 89 S. Ct. 1726, 1728, 23 L. Ed. 2d 284, 288 (1969), independently examine the record to determine the probable impact of the tainted evidence on the minds of the average jury.

In this case, by so thoroughly circumscribing defendant's opportunity to attack the admission of the in-court identification, no evidence of the circumstances under which the lineup was conducted or defendant's photograph was viewed in contained in the record. Furthermore, the factors that are necessary to determine whether or not the in-court identification was independently based were never considered by the trial justice. *See also State* v. *Beaulieu*, 110 R.I. 113, 119, 290 A.2d 850, 853 (1972). His determination that a voir dire hearing was unnecessary resulted in a ruling based on an insufficient evidentiary foundation that the in-court identification was not tainted and hence admissible. *See Perkins* v. *State*, 11, Md. App. at 533, 275 A.2d at 521. However likely it is that the identification procedures were legal, on the state of the record we cannot conclude that the trial justice's ruling was harmless beyond a reasonable doubt.

Having determined that the trial justice erred by refusing to conduct an evidentiary hearing outside the presence of the jury does not necessarily mean that defendant is entitled to a new trial. Rather, we shall remand the case to the Superior Court so that an evidentiary hearing can be conducted as outlined in note 2 of this opinion. See *United States* v. *Wade*, 388 U.S. at 242, 87 S. Ct. at 1940, 18 L. Ed. 2d at 1166; *State* v. *Ragonesi*, 112 R.I. at 345, 309 A.2d at 854; *State* v. *Williams*, 258 S.C. at 485, 189 S.E.2d at 300. If the trial justice determines that the pretrial identifications did not violate the due process fairness standard, or that the in-court identification had an independent source, then, in light of the discussion that follows concerning defendant's other

grounds of appeal, the judgment of conviction should be affirmed. Otherwise, defendant is entitled to a new trial.

## II

The defendant's second major argument is that the trial justice erred by refusing to permit the jury to hear testimony from a psychology professor who was proffered as an expert witness on the factors that affect the reliability of eyewitness identifications. The trial justice excluded this testimony, believing it would effectively invade the province of the jury. He also believed that admitting this testimony would open a floodgate whereby experts would testify on every conceivable aspect of a witness' credibility.

We have stated that an expert's opinion on an ultimate issue to be determined by the jury can be admitted if the trial justice determines that receipt of such information will assist the jury. *E.g., State* v. *Kozukonis,* 100 R.I. 298, 301, 214 A.2d 893, 896 (1965). In making this determination, the trial justice is necessarily accorded wide discretion. *See State* v. *Vargus,* 118 R.I. 113, 126, 373 A.2d 150, 156 (1977). In *Barenbaum* v. *Richardson,* 114 R.I. 87, 90-91, 328 A.2d 731, 733 (1974), we explicated the relevant considerations:

> "The use of expert testimony arises from a need which comes in turn from the fact that the subject matter of the inquiry is one involving special skills and training beyond the ken of the average layman. If all the facts and circumstances can be accurately described to a jury and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as is the expert, there is no necessity for the expert testimony. The jury in such instances can determine the question just as well as the expert. [Citations omitted.] The necessity for the use of expert testimony is a matter which to a considerable extent lies within the sound discretion of the trial court."

We are persuaded that the subject matter of the proffered testimony in this case, the trustworthiness in general of eyewitness observations, was not beyond the ken of the jurors,

and therefore the trial justice did not abuse his discretion in excluding this evidence. Through cross-examination, defense counsel was able to probe into the witness' capacity and opportunity for observation, her attention, interest and distraction. The jury was perfectly capable of assessing the witness' credibility by weighing the inconsistencies and deficiencies elicited in cross-examination. We also note that this precise issue has arisen on innumerable occasions in other jurisdictions. The reported decisions have uniformly sustained a trial justice's discretionary decision to exclude exactly the same type of expert testimony that defendant has sought to place before the jury in this case. *See, e.g., United States* v. *Brown,* 540 F.2d 1048, 1054 (10th Cir. 1976); *United States* v. *Amaral,* 488 F.2d 1148, 1152-53 (9th Cir. 1973); *United States* v. *Fosher,* 499 F. Supp. 76, 77 (D. Mass. 1978); *Dyas* v. *United States,* 376 A.2d 827, 831-32 (D.C. App. 1977); *Nelson* v. *State,* 362 So. 2d 1017, 1021 (Fla. Dist. Ct. App. 1978); *Jones* v. *State,* 232 Ga. 762, 766, 208 S.E.2d 850, 853-54 (1974); *Commonwealth* v. *Middletown,* 6 Mass. App. Ct. 902, 902, 378 N.E.2d 450, 450 (1978).

We have carefully considered the other claims of error argued by the defendant and find that they lack merit.

Accordingly, the case is remanded to the Superior Court for an evidentiary hearing in accordance with the guidelines expressed in Part I of this opinion.

Mr. Chief Justice Bevilacqua did not participate.

*David Leach,* Special Assistant Attorney General, for plaintiff.

*J. Cicilline,* for defendant.