In re RICHARD L.

No. 82–532–C.A.

Supreme Court of Rhode Island.

July 10, 1984.

G. Quentin Anthony, Jr., Sheffield & Harvey, Newport, for petitioner.

William F. Reilly, Public Defender, Janice M. Weisfeld, Asst. Public Defender, Providence, for respondent.

## OPINION

BEVILACQUA, Chief Justice.

This case comes before us on appeal from an adjudication of delinquency entered in the Family Court by reason of an act that would have constituted assault with a deadly weapon if it had been committed by an adult.

The evidence at trial showed that on January 5, 1982 the complainant, who was babysitting at a home in Jamestown, was interrupted by a knock on the door. She opened it to a boy who claimed to be looking for the Gordons of Spurcaden Street. The victim stated that she let the boy in and unsuccessfully tried to assist him by looking in the phone book and calling directory assistance. She testified that the boy was in the home for a period of ten to fifteen minutes. Throughout this time she was talking and interacting with respondent and was able to get a good look at his face. The victim stated that during their interaction all of the lights in the house were on. She further stated that she did not wear glasses and that she had no problems with her eyesight.

The complainant testified that as she was showing respondent out, he grabbed her around the neck and held a knife to her throat. When she began to scream, the boy left the house. She then called the

police. Upon their arrival at the house, she described her assailant as a boy with light wavy hair, who was wearing blue jeans, a blue parka, and a blue knit hat with a red stripe.

Approximately an hour later, a police officer escorted the victim to the home of respondent, then fifteen years old. During the ride over, the police officer informed her that they suspected someone of the assault and were bringing her to see if this was the person. When they arrived, respondent was clad only in shorts. He stood under a light with a police officer behind him. The victim testified that at this time she positively identified him as the boy who had assaulted her. After this identification, at her request, respondent put on a blue parka and a black hat and stood under a brighter light. At trial, the victim stated unequivocally that she had identified respondent when she first came to his home. She stated that she had not needed to see him in a jacket because she was able to make a positive identification·by looking at his face.

Following the at-home confrontation, the suspect and the victim were taken separately to the police station. The police told the victim that they were going to bring through a suspect for identification purposes. She then identified respondent as her assailant after he was paraded through the room with a police officer on either side of him.

Prior to trial, respondent filed a motion to suppress the identifications. The trial justice granted respondent's motion in regard to the showup identification at the police station, excluding the identification as impermissibly suggestive. However, he declined to suppress the showup identification made by the victim at respondent's home.

At trial, the victim identified respondent.[1] The respondent, his mother, two sisters, and a friend all testified that to their knowledge Richard was at home during the

time of the alleged assault. After a trial without a jury, the Family Court justice found respondent to be a delinquent child.

The respondent appeals from the adjudication of delinquency on the following grounds: (1) the trial justice erred in ruling that the initial at-home identification did not deny respondent due process of law; (2) the trial justice erred in admitting the victim's in-court identification after ruling that it was cumulative in nature because it was based in part upon the inadmissible police-station showup; and (3) the trial justice erred in finding respondent guilty because the identification was unreliable and irreparably mistaken.

I

The respondent contends that the showup identification at his home amounted to a denial of his constitutional right to due process and therefore that to allow such evidence constitutes reversible error. Although showup identifications are not per se violative of an accused's right to due process, courts have looked with disfavor upon such confrontations as a means of identifying an accused. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). A showup identification is constitutionally impermissible if it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that it denies the defendant due process of law. *Id.* at 301–02, 87 S.Ct. at 1967, 18 L.Ed.2d at 1206. In making this determination, the trial court must decide whether there exists "a very substantial likelihood of irreparable misidentification" by considering the totality of the circumstances. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); *see State v. Nicoletti,* R.I., 471 A.2d 613, 615 (1984); *State v. Porraro,* 121 R.I. 882, 886, 404 A.2d 465, 468 (1979). In order to correctly assess the totality of the circumstances, a trial court

---

1. Over defense counsel's objection that this identification was improperly based upon the earlier

impermissible showup, the trial justice ruled the in-court identification admissible.

is required to take into consideration the following factors: " 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972); *see State v. Parker*, R.I., 472 A.2d 1206, 1209 (1984); *State v. Delahunt*, 121 R.I. 565, 573, 401 A.2d 1261, 1266 (1979). The court must then weigh these factors against the corrupting effect of the suggestive identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977).

In *Biggers*, the defendant's conviction of rape rested in large part upon the victim's showup identification of the defendant seven months after the crime. At the time of the assault, the victim had the opportunity to directly observe her assailant for at least fifteen minutes. She gave the police only a general description, but stated that she had "no doubt" that the individual at the showup was her assailant. *Neil v. Biggers*, 409 U.S. at 195, 93 S.Ct. at 380, 34 L.Ed.2d at 409. Applying the requisite factors, the Supreme Court held that despite the suggestiveness of the confrontation procedure, under the totality of the circumstances the identification was reliable. *Id.* at 201, 93 S.Ct. at 383, 34 L.Ed.2d at 412.

In *Manson v. Brathwaite*, an undercover narcotics officer positively identified the defendant from a single photograph. The identifying officer had gone with an informant to an apartment where they transacted a drug purchase with an individual subsequently identified as the defendant. He testified that the transaction took from five to seven minutes and that they were standing in a hallway that was illuminated by natural light from a nearby window. The door was open between twelve and eighteen inches. The officer stood about two feet from the defendant, in a position where he was able to observe defendant's face. *Manson v. Brathwaite*, 432 U.S. at 100–01, 97 S.Ct. at 2246, 53 L.Ed.2d at 145. Subsequently, he viewed a single photograph that he identified as a picture of the person who had sold him the drugs. At trial, the officer testified that although eight months had elapsed since the incident, he had no doubt whatsoever that the person in the photograph was the defendant. *Id.* at 101–02, 97 S.Ct. at 2246–47, 53 L.Ed.2d at 146. The Supreme Court rejected the defendant's argument that the officer's identification testimony deprived him of his right to due process. The Court acknowledged that the photographic identification was both suggestive and unnecessary. Applying the criteria of *Biggers*, however, the Court found the identification to be reliable notwithstanding the unnecessarily suggestive manner of identification. *Manson v. Brathwaite*, 432 U.S. at 116–17, 97 S.Ct. at 2254, 53 L.Ed.2d at 155–56.

■ In the instant case, after reviewing all the evidence presented at the suppression hearing, the trial justice stated that "the initial taking of the child to the boy's home was a very short period of time" and that "time is the mere element that is of concern." The trial justice in conclusion held that "the Court is satisfied that [the showup] was proper." In so concluding, the trial justice did not properly evaluate the totality of the circumstances. By considering only the time factor involved in the showup confrontation, the trial justice failed to undertake the proper constitutional analysis. We therefore undertake this analysis.

1. *The opportunity to view.* The victim testified that for a period of ten to fifteen minutes she interacted with respondent. She was in close proximity to him, in an area that was very brightly lit.

2. *The degree of attention.* The victim's attentiveness to respondent was greater than that of a casual or fleeting observer. Due to her conversation and interaction with respondent, her attention was of necessity focused upon him.

3. *The accuracy of the description.* The victim's description of her assailant was minimal, centering predominantly on the clothing he wore.

4. *The victim's level of certainty.* The victim testified that she positively and unequivocally identified respondent as her assailant. She stated that the moment she came to his door she was able to identify him by looking at his face.

5. *The time between the crime and the confrontation.* Within an hour of the time of the alleged assault, the showup confrontation took place. Thus the victim was given an almost immediate opportunity to either identify or exculpate respondent.

■ Assessing these five factors, we do not find a substantial likelihood of irreparable misidentification. Given the victim's close and fairly prolonged interaction with respondent at the time of the assault, followed by an almost immediate confrontation in which she unequivocally identified him as soon as she saw his face, we cannot say that the risk of an erroneous identification is substantial. The victim did not describe her assailant in detail. Nevertheless, her lack of description did not appear to diminish her ability to identify respondent since that recognition was based upon the view of his facial features that she had gained at the time of the assault. The totality of the circumstances indicates the reliability of the identification.

■ Balanced against these factors is the suggestive impact of the accompanying police officer's statement to the victim that the police suspected someone of the assault and were bringing her to see if this was the person. Although suggestive, we cannot say that this single statement rendered the identification so conducive to an irreparably mistaken identification that it denied respondent due process of law. We hold that under these circumstances the showup identification at respondent's home meets the test of reliability and was therefore properly admitted.

## II

■ The respondent next argues that the trial justice erred in admitting the victim's in-court identification after finding that it was cumulative in nature. The trial justice acknowledged the difficulty of determining whether the in-court identification was based solely upon the victim's recollection of the assault, or was also based upon the subsequent identifications. In *State v. Porraro,* 121 R.I. 882, 886, 404 A.2d 465, 468 (1979), this court held that when an illegal identification has been made, a subsequent in-court identification will not be permitted unless the state establishes that it is based upon a sufficient independent recollection of the event. *Porraro* is distinguishable from the instant case in which two confrontations occurred prior to the in-court identification, but only one of which was impermissible. In contrast to *Porraro,* the trial justice in this case found that the in-court identification, although cumulative, was based upon the earlier permissible confrontation that occurred at respondent's home. Specifically, the trial justice stated that "the courtroom identification was *somewhat* cumulative in that she went to the boy's home and identified him * * *. [T]aking into consideration all of the surrounding factual situations * * * I find [that the victim's being] brought to his home was proper, and the in-court identification was [therefore] fair. (Emphasis added.) *Porraro* involved a single impermissible confrontation followed by the courtroom identification. The evil that the *Porraro* court sought to avoid was an in-court identification based exclusively on an earlier impermissible confrontation. In this case, the in-court identification, if indeed it was cumulative, was based upon a prior showup that did not violate respondent's due-process rights. We agree with the trial justice that the victim's in-court identification was proper.

## III

■ Finally, the respondent argues that the victim's identification was unrelia-

ble and irreparably mistaken, and therefore the trial justice erred in finding him guilty of the assault. Because we have already determined that the at-home identification was constitutionally permissible, we necessarily conclude that it was reliable. *See Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. We further find that the identifications were not irreparably mistaken. Both the at-home showup identification and the courtroom identification were based upon the victim's recognition of the respondent gained from their interaction at the time of the assault. The victim testified that she observed the respondent for some ten to fifteen minutes, from which she retained a strong impression of his features. During her in-court identification she stated that she had no doubt whatsoever that the individual she pointed to was the same person who had assaulted her. We find the respondent's contentions of unreliability and irreparable mistake to be without merit.

The respondent's appeal is denied and dismissed, the adjudication of delinquency is affirmed, and the case is remanded to the Family Court for further proceedings in accordance with this opinion.