**STATE**

**v.**

**Gary EDDY et al.**

**No. 85–519–C.A.**

Supreme Court of Rhode Island.

Jan. 16, 1987.

Arlene Violet, Atty. Gen., Thomas Dickinson, Annie Goldberg, Sp. Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, Joseph Hickey, Hutton & Hickey, Providence, for defendants.

## OPINION

MURRAY, Justice.

The defendants were both convicted of robbery and impersonating a police officer. They appeal the convictions on several grounds.

Steven Ricci and his girlfriend Ann McHugh were seated in the back of Ricci's car in Davis Park in Providence at one o'clock in the morning. Three men approached the couple, asking for drugs. When told by Ricci that the couple had none, the men walked away. Within moments, however, the men returned. Two went to Ricci's side of the car, one to McHugh's side. The men said they were police and ordered the couple out of the car so that it could be searched for drugs. When Ricci asked to see a badge, defendant Guilbault showed him a piece of paper and then pulled him from the car. Guilbault threw salt in Ricci's eyes and repeatedly punched him about the face. Defendant Eddy got into the car next to McHugh. He told her not to worry, that he was a police officer, and began to rummage through her pocketbook. The car's doors were open, lighting the car's interior. The third man was behind the car, pounding on the trunk.

Guilbault seemed bent on provoking Ricci to hit him back. Ricci had cuts across his nose and under his eyes and had lost his contact lenses. In an effort to appease Guilbault, Ricci yielded his wallet, from which Guilbault removed thirty dollars. Guilbault hit Ricci again and, finally, Ricci returned a blow. Guilbault said, "Now you're going to bleed," and pulled an object from his pocket. Ricci bolted, pursued by all three men. The men gave up the chase

moments later and returned to the car. McHugh was still sitting in the back. Guilbault ordered McHugh out and Eddy began pulling on her arm. Just then, coincidentally, a police van, lights flashing, came down the street and the men ran off.

Ricci, meanwhile, had called the police from a nearby house. Two officers responding to the police call saw a man running from the park and gave chase. One of the officers discovered Guilbault hiding in some shrubbery. He had two saltshakers in his pocket. The officers arrested him.

Ricci and McHugh had been taken to Roger Williams Hospital, and the police brought Guilbault to the hospital for identification. Ricci and McHugh both observed Guilbault in the back of the police cruiser, and both positively identified him as one of the men who had accosted them. McHugh also gave police a description of the man who had rummaged through her purse.

Guilbault was taken to the police station, where he gave police his address. Two officers went to the apartment building where Guilbault lived, entered the building's common area, and went up to Guilbault's second-floor apartment. The officers knocked at the door and were answered by Guilbault's girlfriend, who told them that Guilbault had been out drinking with "Gary," who was upstairs. The officers ascended the stairs to the third floor, and Guilbault's girlfriend called up, "Gary, the police want to talk to you."

According to the officers, the door to the apartment was open and police were able to see a tall, dark-haired man with a moustache hurriedly taking off a navy-blue golf shirt. The man, who fit the general description given by McHugh, was Gary Eddy. Eddy, who did not live in that apartment, was arrested and, at police request, put back on the navy-blue shirt to be photographed for identification at the station.

Less than an hour later, McHugh, who had been taken to the police station with Ricci after their visit to the hospital, select-

ed Eddy's photograph from an array of six photographs of similar looking men. Eddy and Guilbault were both identified by Ricci and McHugh at trial. The third man was never tried.

## I

### THE MOTIONS TO SEVER

Both defendants moved pretrial to sever on the ground that their defenses were antagonistic. Eddy's theory was that Guilbault was solely responsible for the robbery of Ricci's money, and Eddy's counsel intended to point the finger at Guilbault during closing argument.

■ The granting or denying of a criminal defendant's motion to sever is within the sound discretion of the trial justice. To prevail in demonstrating that a trial justice has abused this discretion, a defendant must show that the trial justice's denial of the motion to sever prejudiced the defendant to such a degree that he or she was denied a fair trial. *State v. Tarvis*, 465 A.2d 164, 172 (R.I.1983).

■ Here, defendants have not met their burden. Neither defendant testified, thus neither defendant testified against the other. Both victims testified that defendants represented in concert that they were police officers. Ricci testified that Guilbault dragged him from the car, punched him and robbed him of his money. McHugh testified that Eddy detained her and rummaged through her purse while Guilbault was busy with Ricci.

This is not a case where evidence presented against one defendant necessarily "rubbed off" on the other. Nor did the evidence presented tend to inculpate one defendant while exculpating the other. Though Eddy may not have physically beaten Ricci or physically taken his money, Eddy could still be held responsible for his actions as an aider and abettor. Further, the trial justice negated the possibility that evidence presented against one defendant would be considered by the jury as evidence against the other by properly in-

structing the jury that deliberations were to be separately carried on as to each defendant and to each charge, and that evidence against one defendant could not be used to convict the other.

The defendants have failed to demonstrate that the denial of their motions to sever by the trial justice resulted in denial to them of a fair trial. Upon the record we find no abuse of discretion by the trial judge.

## II

### THE IDENTIFICATION PROCEDURES

Guilbault contends that the confrontational nature of the showup identification procedure conducted by the police at the hospital violated his rights under the United States and Rhode Island Constitutions. He also contends that his in-court identification by Ricci was improper. Hence, alleges Guilbault, the trial justice erred in denying his motions to suppress the identifications.

■ "A showup identification is constitutionally impermissible if it is so unnecessarily suggestive and conducive to an irreparably mistaken identification that it denies the defendant due process of law." *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967); *In re Richard L.*, 479 A.2d 103, 105 (R.I.1984). A trial court, in deciding whether to admit a suggestive identification, must consider the totality of the circumstances, and balance the suggestive nature of the identification procedure against factors such as the witnesses' opportunity to view the accused during the crime, the witnesses' degrees of attention, the witnesses' certainty at the time of the identification, the accuracy of prior descriptions given by the witnesses, and the length of time between the crime and the identification. *Id.* at 105–06 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977), and *Neil*

*v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972)).

In the instant case, Guilbault approached Ricci's car with two other men, pulled Ricci from the car, battered him about the face, threw salt in his eyes, robbed his wallet, until, after forty or so minutes of face-to-face contact, Ricci broke away and ran for help. Guilbault chased him briefly, then returned to the car where he confronted McHugh, and ordered her out of the car. The passing police van caused Guilbault and the other two men to flee, but Guilbault was found hiding in nearby bushes, salt shakers in his pocket, by police minutes later. He was arrested, handcuffed, and taken in a patrol car to the hospital where both Ricci and McHugh positively identified him as Ricci's attacker.

At trial, Ricci testified that though his contact lenses were knocked out five or ten minutes after Guilbault pulled him from the car, he had gotten a "good look" at Guilbault before then and was able to see Guilbault anyway since Guilbault was only a few inches away from him. Ricci testified that at the hospital he went "right up" to the police car and could see "close up" that the man in the car was his attacker.

McHugh testified that she is farsighted, that she only wears glasses to read, and that she looked outside the car and saw Guilbault punching Ricci. She also observed Guilbault when, after chasing Ricci, he returned to the car and ordered her out.

■ We are of the opinion that the trial justice was correct in ruling that, even though the procedure of viewing Guilbault alone in the back of the patrol car could be considered suggestive, Guilbault's constitutional rights had not been violated because (1) both Ricci and McHugh had ample opportunity to view Guilbault; (2) Ricci paid particular attention to Guilbault as the one who was assaulting him; (3) the showup took place very shortly after the robbery had occurred; (4) the prior descriptions of Guilbault given by Ricci and McHugh were generally accurate; and (5) both witnesses identified Guilbault without hesitation.

Since the pretrial identification was constitutional, the later, in-court identifications were not fruit of the poisonous tree, and were thus also admissible.

Eddy contends that McHugh's identification of him from the photo array, as well as Ricci's later in-court identification of him, were inadmissible on several grounds. Eddy first argues that his arrest was unlawful because the police entered his and Guilbault's apartment building without a warrant. Thus, Eddy argues, any photographs derived from his arrest were fruit of the poisonous tree.

■ A determination of an arrest's legality is an essential predicate for the admission of identification evidence that is fruit of the arrest. *State v. Adams,* 481 A.2d 718, 728 (R.I.1984). While in custody, Guilbault had given his address to police. Two officers went to the apartment building to verify Guilbault's address and to speak with potential witnesses as part of their routine investigation. Since there was nothing on the front of the building indicating who lived in the building, the officers went around to the back and entered a common hallway through an unlocked door. There was no evidence that the door was ordinarily locked, that a doorbell or intercom system was available, or that any person could have heard or responded to a knock. We cannot find, on these facts, that the officers' warrantless entry into the building, which anyone was apparently free to enter, was unlawful. The hallway of an apartment building is a "public" place for purposes of interpreting the Fourth Amendment, and may be entered by police without a warrant. *United States v. Stephenson,* 542 F.2d 1094, 1100 (9th Cir.1976), *cert. denied,* 429 U.S. 1064, 97 S.Ct. 792, 50 L.Ed.2d 781 (1977).

■ Nor was it unlawful for the police to arrest Eddy in the third-floor apartment where they observed him, through the open door, hurriedly taking off a blue golf shirt. They had been told by Guilbault's girlfriend that Guilbault had been out all night

with "Gary," who was visiting upstairs, and the police knew that one of the two men with Guilbault had been wearing a blue golf shirt. Eddy also fit the general description given police by McHugh. The police thus had probable cause to arrest Eddy. Since the trial court found as fact that the third-floor apartment's owner consented to allowing the police to enter the apartment, and since defendant has made no attempt to show that this finding by the trial court was clearly wrong, Eddy's arrest was lawful. *Palmigiano v. Mullen,* 119 R.I. 363, 369–70, 377 A.2d 242, 247 (1977).

Eddy next contends that McHugh's identification of him from a photo array was improper because he was the only person depicted, in the pile of six photographs shown to McHugh, wearing a blue golf shirt. This contention is without merit. Even assuming the photo array was suggestive insofar as Eddy was the only one of the six mustachioed white males in the photo array wearing a navy golf shirt, Eddy's due process rights were not violated by the admission of McHugh's identification into evidence. When the factors set forth in *Manson v. Brathwaite, supra,* and *Neil v. Biggers, supra,* are balanced against any suggestiveness of the photo array, the evidence is clearly admissible. Eddy was in the back seat of the car, next to McHugh, for thirty minutes. The interior light of the car was on the whole time. McHugh had ample opportunity to view Eddy, and her attention was obviously focused on him as he rifled through her purse and belongings and tried to convince her that he was a police officer. McHugh gave police an accurate description of Eddy and a short time later positively identified his photograph as distinguished from five other photographs of similar-looking white males. These factors establish the reliability of the identification made by McHugh above and beyond any suggestiveness in that only Eddy was wearing a blue shirt.

Eddy's last contention is that because Ricci was unable to identify him on the night of the incident, Ricci's in-court identification of Eddy was inadmissible. Eddy argues that Ricci could only identify him because Ricci had seen Eddy at defense counsel's table during a suppression hearing. Ricci, however, freely admitted at trial that he was unable to identify Eddy from the photo array and that though he didn't get a good look at Eddy the night of the incident, he did get a look. The jury was able to weigh this evidence against Ricci's testimony that he could identify Eddy in person at trial. Further, even if there was any error in allowing Ricci's in-court identification, it was harmless beyond a reasonable doubt because the jury had a positive identification from McHugh, who had the best look at Eddy on the night of the incident.

## III

## THE MOTION FOR ACQUITTAL

Eddy argues that at the close of the state's case, the trial justice should have granted his motion for a judgment of acquittal on the robbery charge because Guilbault alone robbed Ricci. At the very least, Eddy continues, the trial justice's jury instructions on the issue were inadequate.

In considering a motion for acquittal, this court applies the same standard in reviewing the evidence as does the trial justice: we review the evidence in the light most favorable to the state, and draw therefrom all reasonable inferences consistent with the defendant's guilt. *State v. Gazerro,* 420 A.2d 816, 827 (R.I.1980). We neither weigh the evidence nor pass on the credibility of witnesses. *State v. Gordon,* 508 A.2d 1339, 1348 (R.I.1986). Here, viewing the evidence in the light most favorable to the state, there is no question that Eddy was one of the three men at the scene, that he got into Ricci's car, that he sat next to Ann McHugh and took her pocketbook, that he told her they were "just roughing up her boyfriend" and kept her occupied while Guilbault battered and robbed Ricci

just feet away. Based on these facts, there was clearly no error in submitting the question of Eddy's aiding and abetting the robbery to the jury.

■ With respect to defendant's contention that the jury charge was erroneous or inadequate, "[t]he trial justice is free to instruct the jury in his [or her] own words in a criminal proceeding, as long as he or she states the applicable law." *State v. Ahmadjian,* 438 A.2d 1070, 1086 (R.I.1981). The trial justice correctly instructed the jury on the law of aiding and abetting by quoting what this court said in Gazerro. His instruction was as follows:

"[M]ere presence at the scene in and of itself, is insufficient to warrant a conviction as an aider or abettor. But that mere presence is a factor that must form part of a [c]ourt's determination of the guilt of the defendant. Beyond mere presence, the circumstances must establish that a defendant shared in the criminal intent of the principal and there must be a community of unlawful purpose at the time the act is committed. As the term aiding and abetting implies, it assumes some participation in the criminal act in furtherance of the common design, either before or at the time [that] the criminal act is committed. It implies some conduct of an affirmative nature and mere negative acquiescence is not

sufficient. The primary question that the [courts] have had to confront, is what facts and circumstances, including a defendant's actual or constructive presence, will combine to establish beyond a reasonable doubt a defendant's guilty participation. Factors not alone dispositive, but which will be considered in their totality include association or relationship between the perpetrator and those accused of aiding and abetting. Knowledge that a crime was to be committed. Flight from the scene is also a factor to be considered. Ultimately, what combination of evidence and inferences will be legally sufficient to support a verdict of guilty as an aider and abettor must be determined on a case-by-case basis."

Hence, the jury instruction was proper.

We have examined the defendants' additional contentions and find that they are without merit.

For these reasons, the defendants' appeals are denied and dismissed, the judgment of the trial court affirmed, and the papers remanded to the Superior Court.