STATE

v.

Corey MARTINEZ.

No. 98–308–C.A.

Supreme Court of Rhode Island.

June 8, 2001.

Virginia McGinn, Paul Daly, Jr., Aaron Weisman, Roy Fowler, Providence, for Plaintiff.

Kelly Monteiro, Paula Rosin, Providence, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on April 5, 2001, the result of an appeal from a judgment of conviction for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), conspiracy to violate RICO, robbery, conspiracy to rob and aiding and abetting burglary. The defendant was directed to appear and show cause why the issues raised on appeal should not be summarily decided. After examining the memoranda submitted by the parties and hearing the arguments

of counsel, we are of the opinion that cause has not been shown and that the issues raised on appeal shall be decided at this time.

### Facts and Travel

The charges against defendant, Corey Martinez (defendant or Martinez), were a small part of a 722–count indictment implicating approximately forty-four other individuals known as the "Golden Nugget Group" (group).[1] The charges relative to Martinez dealt with two separate incidents; the first was the burglary of a friend's home that Martinez was accused of having aided and abetted, and the second was the robbery of a jewelry store in which defendant was an active participant.

Michael Rossi (Rossi), an integral member of the Golden Nugget Group, rejecting the belief that silence is golden, testified that soon after Christmas in 1994, Martinez informed other members of the group that Laverne Rego's (Rego) house on Princess Avenue in Cranston would be a good place for a "score" because Rego had just received a five-carat, $100,000 diamond ring as a Christmas gift. The defendant, a close family friend of Rego, was present when the ring was given to her by her boyfriend.[2] The defendant explained to Rossi and the others that Rego never removed the ring from her finger; thus that they would have to mount the home invasion while Rego was present. Because Martinez was the only one in the group who had actually been in the house, he described the layout and Rego's habit of watching television in the evening. The burglary occurred on January 7, 1995. At

---

1. The Golden Nugget Group was a group of young men involved in an enterprise of criminal activity, including burglary and robbery. The group got its name from the Golden Nugget Pawn Shop in Providence, where they sold their stolen goods.

2. However, the diamond in this case was not a girl's best friend because when it arrived at the Golden Nugget Pawn Shop it was determined to be a fake, worth only a fraction of what the group had estimated.

approximately 8:30 p.m., Rego was alone in her home when two masked men broke down her door. Rego, who wore rings on every finger, was ordered to remove them. However, before she could do so, one of the men shot her in the head. While she lay unconscious on the floor, another assailant removed the large diamond from her hand. Rego, who underwent brain surgery as a result of the gunshot wound, later realized that the burglars had taken the stone from only one of her rings and that no other jewelry was stolen, nor was her handbag, containing $1,000 in cash.

Following the break-in, Martinez's familiarity with the family enabled him to keep abreast of the investigation and he relayed this information to the rest of the group. Although Martinez never visited Rego in the hospital, he called her several times to inquire whether she had any idea who attacked her in her home. Additionally, when the police questioned Rego and her family about the possibility that Martinez had been involved, they vouched for him, maintaining that he would never be involved in such a heinous crime. Because Martinez was the only connection to the group, the robbers were confident that the crime would remain unsolved.

After the burglary of Rego's home, Rossi, Martinez and other members of the group met to discuss the robbery of Martin L. Jewelers. The plan developed that defendant would go into the store and ask the woman behind the counter, later identified as Tracy Martin (Martin), to show him some watches. As Martin bent down to get the watches, defendant was to pull a gun from his waistband, tell her that there was a robbery in progress, at which point his compatriots would enter the store and empty the display cases. This is exactly how the robbery took place. The defendant received $4,500 for participating.

After a jury trial in Superior Court, defendant was convicted of violating and conspiring to violate Rhode Island's RICO statute, G.L.1956 chapter 15 of title 7, robbery and conspiring to rob Martin L. Jeweler's in violation of G.L.1956 § 11–39–1 and G.L.1956 § 11–1–6, and aiding and abetting the burglary of Rego's home in violation of § 11–1–3. Martinez was sentenced to ten years in prison, five years to serve and five years suspended with probation for the RICO violations. For the actual robbery of Martin at the jewelry store, defendant received a thirty-year sentence, ten years to serve, twenty years suspended with probation, and a ten-year sentence for conspiracy to rob. These sentences were to run concurrently to each other and consecutive to a ten-year suspended sentence for the aiding and abetting count. The defendant has appealed.

## Discussion

The defendant has raised numerous issues on appeal. We shall discuss only those issues that we deem central to this appeal. First, Martinez contended that he was severely prejudiced by the joinder of the aiding and abetting of the burglary with the RICO-related offenses in the indictment,[3] and that the trial justice abused his discretion and caused substantial prejudice to Martinez when he refused to sever these offenses. Finally, Martinez, who is indigent, contended that he was deprived of effective assistance of counsel and due process when the trial justice refused to allow money for an expert on eyewitness identification to assist in preparation of his cross-examination of Martin. We deny and dismiss this appeal.

██ Rule 8(a) of the Superior Court Rules of Criminal Procedure permits the joinder of multiple offenses in a single

---

**3.** The robbery charges served as the predicate offenses for the RICO charges.

indictment when the offenses are based "on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." *See State v. Rice*, 755 A.2d 137, 142 (R.I.2000); *see also State v. Lassor*, 555 A.2d 339, 345 (R.I. 1989). In the instant case, it is clear that the crimes for which Martinez was accused and ultimately convicted were part of a common plan or scheme that was part of a larger criminal organization. Although the offenses for which Martinez was indicted stem from two separate incidents that were a month apart, they involved a similar pattern of conduct and a similar plan. All the counts relating to defendant involved a collaboration with a particular group of individuals over a relatively short period of time. Martinez and the other members of the group sought financial gain by stealing jewelry, then selling the stolen goods to the Golden Nugget Pawn Shop. For these reasons, we conclude that the offenses charged in this indictment were properly joined.

Rule 14 of the Superior Court Rules of Criminal Procedure permits, upon a showing of substantial prejudice by the joinder of two or more offenses in a single indictment, a severance of the counts when a defendant can demonstrate that absent such a severance, his right to a fair trial will be impaired. *See State v. Evans*, 742 A.2d 715, 718 (R.I.1999) (citing *State v. Bernier*, 491 A.2d 1000, 1003 (R.I.1985); *State v. Sharbuno*, 120 R.I. 714, 717, 390 A.2d 915, 917 (1978)). However, a severance of counts in an indictment is not a matter of right, but falls within the sound discretion of the trial justice and will be upheld by this Court absent an abuse of that discretion. *Id.; see also State v. Whitman*, 431 A.2d 1229, 1233 (R.I.1981).

We are satisfied that the trial justice did not abuse his discretion by denying defendant's motion to sever. As stated above, the onus is on the defendant to show that his right to a fair trial has been implicated, by virtue of the joinder of two or more offenses in the indictment, resulting in substantial prejudice. The defendant has made no such showing in this case. The evidence against this defendant was straightforward and the issues presented were distinct. Witnesses testified for both the state and the defendant with respect to the burglary of Rego's home and the robbery at the jewelry store. Rossi, the state's principal witness and a member of the group, described the plans for both the burglary and the robbery and explained Martinez's involvement in each offense. In his charge to the jury, the trial justice parsed the elements of the crimes and explained that each charge constituted a separate criminal offense and that each count required a separate verdict on defendant's guilt or innocence. The trial justice further explained that the two counts relating to the jewelry store robbery were the only charges that related to the RICO offenses, because they were the predicate offenses necessary to support the RICO counts. We glean no evidence from the record that suggests that Martinez suffered substantial prejudice as a result of the joinder of these offenses. Nor is there evidence in this record tending to show that his right to a fair trial was compromised because defendant's motion to sever was denied. We are satisfied that the trial justice acted properly and within his discretion in denying the motion to sever the counts in the indictment.

Finally, "[a]lthough an indigent defendant may be entitled to public funding to retain experts 'necessary for an adequate defense,' * * * the actual admissibility of any particular proposed expert testimony should, of course, be addressed in the first instance by the trial justice." *State v. Morris*, 744 A.2d 850, 855 (R.I.

2000) (quoting *Ake v. Oklahoma,* 470 U.S. 68, 76, 80, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53, 64 (1985)). "It is well settled that questions regarding the admissibility and relevancy of evidence are left to the sound discretion of the trial justice." *Morris,* 744 A.2d at 855 (quoting *State v. Greene,* 726 A.2d 471, 473 (R.I.1999) (order)). The law in Rhode Island is clear with respect to state funding of experts relative to the reliability of eyewitness testimony. In *State v. Porraro,* 121 R.I. 882, 892, 404 A.2d 465, 471 (1979), this Court stated that, in general, the jury does not need assistance in determining the trustworthiness of an eyewitness. Specifically, we held that "[a] jury [is] perfectly capable of assessing the witness' credibility by weighing the inconsistencies and deficiencies elicited in cross-examination." *Id.* at 893, 404 A.2d at 471. We have also held that testimony concerning the reliability or unreliability of an eyewitness would serve only to confuse and mislead the jury, rather than aid them in their mission as fact finders. *Morris,* 744 A.2d at 855 (citing *State v. Gomes,* 604 A.2d 1249, 1256 (R.I. 1992)). Here, the trial justice found that the trustworthiness of the eyewitness identification was not beyond the understanding of the jurors. We agree and conclude the trial justice did not err in refusing to allow public funds for this purpose.

Accordingly, the defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed and the papers in this case are remanded to the Superior Court.

Chief Justice WILLIAMS did not participate.